

FILED

OCT 08 2019

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

1
2
3    In re:                          )   Case No. 17-25335-B-7
                                     )
4    RAJPAL SINGH CHATHA and         )   Adversary No. 18-2102
     TARANJIT KAUR CHATHA,           )
5                                    )   DC Nos. CDH-3
                    Debtor(s).       )           GJH-3
6    _____)
7    DOUGLAS WHATLEY, Chapter 7      )
     Trustee,                        )
8                                    )
            Plaintiff(s),            )
9    v.                              )
                                     )
10   SIMRANJIT CHATHA; THRIVE        )
     MANAGEMENT LLC,                 )
11                                   )
            Defendant(s).            )
12   _____)
13
14   **CONSOLIDATED MEMORANDUM DECISION GRANTING IN PART AND DENYING IN
     PART PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT**
15
16
17   <u>INTRODUCTION</u>
18        The court has before it two motions for partial summary
19   judgment filed by plaintiff Douglas Whatley in his capacity as
20   the trustee appointed in the parent Chapter 7 case filed by
21   debtors Rajpal Singh Chatha ("Rajpal") and Taranjit Kaur Chatha
22   ("Taranjit") (collectively, "Debtors"), Case No. 17-25335.[1]  The
23   first motion is Plaintiff's Motion for Partial Summary Judgment
24   which concerns a La Quinta Inn & Suites in Mansfield, Texas
25   ("Hotel").  Docket 99.  The second motion is Plaintiff's Second
26
27        [1]Debtors Rajpal Chatha and Taranjit Chatha, and defendant
     Simranjit Chatha ("Simranjit"), all share the same last name.
28   The court will use the individuals' first names for clarity.  No
     disrespect is intended.

1

1  Motion for Partial Summary Judgment which concerns real property
2  located at 513 B Street, Marysville, California ("Marysville
3  Property").  Docket 107.  The motions assert that the transfer of
4  the Debtors' ownership interests in the Hotel and the Marysville
5  Property from the Debtors to their son Simranjit and/or his
6  entities are intentional or constructive fraudulent transfers.

7       Defendants Simranjit and Thrive Management, LLC ("Thrive")
8  filed oppositions to both motions.[2]  Dockets 118 (Hotel), 124
9  (Marysville Property).  Defendants deny that the transfer of the
10 Debtors' ownership interests in Hotel and Marysville Property are
11 fraudulent transfers.  Defendants assert that plaintiff lacks a
12 basis to recover the Hotel and the Marysville Property, and that
13 allowing plaintiff to recover both properties is excessive and
14 overreaching.  Defendants also assert that any action to avoid
15 the transfer of the Marysville Property is barred by the
16 applicable statute of limitations.

17      Plaintiff replied to defendants' oppositions.  Dockets 131
18 (Hotel), 137 (Marysville Property).  With the replies, plaintiff
19 also submitted objections to certain evidentiary materials that
20 defendants submitted with their oppositions.  Dockets 133
21 (Hotel), 138 (Marysville Property).  With regard to the Hotel
22 motion, plaintiff also objected to defendants submission of their
23 own statement of <u>undisputed</u> facts in response to plaintiff's
24 statement of undisputed facts.  Docket 132 at 23:19-30:11.

25      The court has reviewed the motions, oppositions, replies,

26

27 _____

28      [2]No opposition appears to have been filed by defendant
   Summerfest Hospitality, LLC ("Summerfest").

1   and all related evidentiary exhibits. To the extent not subject

2   to a sustained objection, the court takes judicial notice of the

3   docket in this adversary proceeding and in the parent Chapter 7

4   case. <u>See</u> Fed. R. Evid. 201.

5       As to the Hotel motion, there is a genuine issue of material

6   fact that precludes partial summary judgment for plaintiff. The

7   court alternatively concludes that plaintiff is not entitled to

8   judgment as a matter of law. The motion for partial summary

9   judgment that concerns the Hotel will therefore be denied.

10      As to the Marysville Property motion, there are no genuine

11   issues of material fact that preclude partial summary judgment

12   for plaintiff. Therefore, to the extent it concerns the

13   intentional fraudulent transfer of the Marysville Property, the

14   second motion for partial summary judgment which concerns the

15   Marysville Property will be granted. The transfer of the

16   Debtors' ownership interest in the Marysville Property from the

17   Debtors to Simranjit will be avoided, Simranjit will be divested

18   of the ownership interest in the Marysville Property, and the

19   Marysville Property ownership interest (and thence the Marysville

20   Property) will be recovered by and vested in the plaintiff for

21   the benefit of the Debtors' bankruptcy estate. And to the extent

22   they concern the Marysville Property, judgment on the Fourth,

23   Sixth, and Seventh Claims for Relief in the amended complaint

24   will be entered for plaintiff and against defendants.

25

26   <u>**JURISDICTION AND VENUE**</u>

27      This adversary proceeding arises from and relates to the

28   Debtors' Chapter 7 case which is filed and pending in the Eastern

District of California.  Venue is proper under 28 U.S.C. § 1409.

Federal subject matter jurisdiction is founded on 28 U.S.C. § 1334.  This adversary proceeding involves core claims under 28 U.S.C. §§ 157(b)(2)(A), (H), and (0) as well as non-core claims under California state law.  The parties have consented to entry of a final judgment by a bankruptcy judge.[3]  <u>See</u> 28 U.S.C. § 157(c)(2).

**PROCEDURAL BACKGROUND**

The complaint that initiated this adversary proceeding was filed on June 22, 2018.  Docket 1.  The original complaint named Simranjit and Thrive as defendants.  <u>Id.</u>  Defendants were served on June 22, 2018.  Docket 6.  Defendants answered the original complaint on August 1, 2018.  Docket 7.

Plaintiff filed two initial motions for partial summary judgment.  Both motions sought the same relief requested in the motions presently before the court.  The initial Hotel motion was filed on May 13, 2019.  Docket 26.  The initial Marysville

---

[3]The Joint Status Conference Statement and Discovery Plan filed August 15, 2018, states as follows:
> This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) in that the action arises under, arises in and/or relates to [the Debtors'] bankruptcy.  This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Specifically, the action includes claims to avoid and recover alleged fraudulent transfers under 11 U.S.C. § 548 and 550. The Trustee consents to entry of a final judgment by this Court and also believes that the Court has full authority to enter a final judgment. Defendants consent to entry of a final judgment by this Court.
Docket 9 at 2:8-15.

Property motion was filed on June 4, 2019.  Docket 53.

Meanwhile, on June 4, 2019, plaintiff filed a motion for leave to file a first amended complaint which added new claims and added Summerfest as a new defendant.  Docket 48.  Based on a stipulation and order dated June 6, 2019, docket 60, a first amended complaint was filed on June 10, 2019.  Docket 61.  Summonses were reissued on June 10, 2019, docket 63, and the reissued summonses together with the first amended complaint were served on all defendants on June 11, 2019.  Docket 74.  Simranjit and Thrive answered the first amended complaint on June 27, 2019.  Docket 85.  Summerfest answered the first amended complaint on June 28, 2019.  Docket 89.

Because the initial motions for partial summary judgment were based on the original complaint, on June 19, 2019, both motions were denied without prejudice and with leave to re-file to the extent based on the first amended complaint.  Dockets 53, 82.  On July 16, 2019, plaintiff re-filed the motions now before the court.  Dockets 99, 107.  Defendants filed oppositions on August 13, 2019.  Dockets 118, 124.  Plaintiff filed replies on August 20, 2019.  Dockets 131, 137.  Both motions were heard on September 3, 2019.  Appearances were noted on the record.

## EVIDENTIARY OBJECTIONS

During the hearing held on September 3, 2019, the court heard and sustained plaintiff's objections to evidence that defendants submitted in support of their oppositions to the two motions for partial summary judgment.  The court stated tentative decisions regarding those objections on the record.  The court

1  now supplements its oral rulings.[4]

2      Plaintiff's objection at Docket 132 relates to a separate

3  statement of "Additional Undisputed Facts" that defendants, as

4  the nonmoving parties, unilaterally and without leave filed with

5  their opposition to the Hotel motion.  <u>See</u> Docket 122 at 26:14-

6  28:13 (Additional Undisputed Facts Nos. 104-114).  The court

7  noted, and defendants' attorney conceded, that although Local

8  Bankruptcy Rule 7056-1 permits the nonmoving party to file a

9  separate statement of <u>disputed</u> facts nothing in Federal Rule of

10  Civil Procedure ("Civil Rule") 56, Federal Rule of Bankruptcy

11  Procedure ("Bankruptcy Rule") 7056, or Local Bankruptcy Rule

12  7056-1 authorizes or permits the nonmoving party to file its own

13  separate statement of <u>undisputed</u> facts.  Based on the concession

14  by defendants' attorney, the court sustained plaintiff's

15  objection and ordered defendants' statement of "Additional

16  Undisputed Facts" stricken as unauthorized and procedurally

17  improper.  <u>See</u> <u>United States v. Center for Employment Training</u>,

18  2019 WL 424189, *4 (E.D. Cal. 2019) (striking nonmoving party's

19  statement of undisputed facts as procedurally improper and

20  unauthorized under nearly identical local district court rule and

21  noting that it is within the court's discretion to consider some

22  facts but not as undisputed); <u>see also</u> <u>Operating Engineers Health</u>

23  <u>& Welfare Trust Fund v. The Mega Life & Health Ins. Co.</u>, 2003 WL

24  22416395, *8 (N.D. Cal. 2003) (noting additional separate

25  _____

26      [4]To the extent there is any conflict between the court's

27  oral ruling placed on the record in open court and this written
    decision, this written decision controls.  <u>Playmakers, LLC v.</u>

28  <u>ESPN, Inc.</u>, 376 F.3d 894, 896-97 (9th Cir. 2004).

statement of undisputed facts not permitted under local rule and
striking same). The court ratifies its prior ruling but notes
that it retains discretion to consider the additional facts not
as undisputed but as may be appropriate to the resolution of
either motion.

Plaintiff's objection at Docket 133 relates to evidence
defendants submitted with their opposition to the Hotel motion.
More precisely, plaintiff objected to defendants' use of
bankruptcy schedules filed in the 2014 Chapter 11 case, discussed
infra, that Brightside Hospitality, LLC ("Brightside") filed in
the Northern District of Texas as Case No. 14-34409. Defendants
submitted those schedules to establish the Hotel's value in 2014-
2015. Plaintiff objected to the schedules on the basis they are
hearsay in that they are an out of court statement offered to
prove the truth of the matter asserted, i.e., the Hotel's value
at the time of Brightside's Chapter 11 bankruptcy filing.

During the September 3, 2019, hearing defendants' attorney
acknowledged that Rajpal prepared Brightside's bankruptcy
schedules. Defendants' attorney also conceded that defendants
relied on the bankruptcy schedules for the truth of the matter
asserted therein, i.e., the Hotel's value. Based on those
concessions, the court sustained plaintiff's objection on the
basis the bankruptcy schedules are hearsay. The court ratifies
its ruling. However, the court clarifies that it sustains
plaintiff's objection as to the form of the evidence submitted.

Plaintiff's objection at Docket 138 concerns evidence that
defendants submitted in response to the Marysville Property
motion. On the basis it is impermissible lay opinion testimony,

7

1   plaintiff objected to Rajpal's declaration statement that he is

2   "of the opinion that in 2014, 513 B Street, Marysville,

3   California was worth $150,000.00." Docket 138 at 2:3-4. The

4   court sustained plaintiff's objection because although it is true

5   that under Federal Rule of Evidence ("Evidence Rule") 701 an

6   owner of property may testify as a lay witness as to the

7   property's value, Enewally v. Wash. Mut. Bank (In re Enewally),

8   368 F.3d 1165, 1173 (9th Cir. 2004), defendants' attorney

9   acknowledged that Rajpal did not own the Marysville Property in

10  2014. The court ratifies its earlier ruling.

11       Plaintiff's objection at Docket 138 also concerns tax

12  returns at Exhibits U, V, and W. Plaintiff objected to the tax

13  returns on the basis they are not authenticated. Defendants'

14  attorney acknowledged that the tax returns are not authenticated

15  and, again, the court sustained plaintiff's objection on that

16  basis. Evidence Rule 901(a) requires "authentication or

17  identification as a condition precedent to admissibility." A

18  foundation must be laid by evidence sufficient to support a

19  finding that the matter in question is what its proponent claims

20  before evidence may be admitted. Fed. R. Evid. 901(a).

21  Unauthenticated documents cannot be considered on a motion for

22  summary judgment. Las Vegas Sands, LLC v. Nehme, 632 F.3d 526,

23  532-33 (9th Cir. 2011) (citing Orr v. Bank of America, NT & SA,

24  285 F.3d 764, 773 (9th Cir. 2002)) (quotation marks omitted).

25  Indeed, "the [Ninth Circuit] Court of Appeals has repeatedly held

26  that documents which have not had a proper foundation laid to

27  authenticate them cannot support [or defend against] a motion for

28  summary judgment." Burch v. Regents of University of California,

8

1   433 F.Supp.2d 1110, 1120 (E.D. Cal. 2006) (citations and internal

2   quotations omitted).  Lack of proper authentication is therefore

3   an appropriate objection and so the court ratifies its earlier

4   ruling.

5

6   **LEGAL STANDARD**

7        Civil Rule 56 permits the court to grant summary judgment if

8   the moving party shows there is no genuine dispute as to any

9   material fact and the moving party is entitled to judgment as a

10  matter of law.  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056;

11  Local Bankr. R. 7056-1.  "A motion for partial summary judgment

12  is resolved under the same standard as a motion for summary

13  judgment."  Barnes v. County of Placer, 654 F. Supp. 2d 1066,

14  1070 (E.D. Cal. 2009) (citing California v. Campbell, 138 F.3d

15  772, 780 (9th Cir. 1998)).

16       A motion for summary judgment calls for a "threshold

17  inquiry" into whether a trial is necessary, that is, whether

18  there are "any genuine factual issues that properly can be

19  resolved only by a finder of fact because they may reasonably be

20  resolved in favor of either party."  Anderson v. Liberty Lobby,

21  Inc., 477 U.S. 242, 250 (1986).  The court does not weigh

22  evidence or assess credibility; rather, it determines which facts

23  are not disputed then draws all inferences and views all evidence

24  in the light most favorable to the nonmoving party.  See Id. at

25  255; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

26  574, 587-88 (1986).  "Where the record taken as a whole could not

27  lead a rational trier of fact to find for the non-moving party,

28  there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at

587. An issue is genuine if there is enough evidence for a trier

of fact to make a finding in favor of the nonmoving party, and an

issue is material if it might legally affect the outcome of the

case. <u>Far Out Prods., Inc. v. Oskar</u>, 247 F.3d 986, 992 (9th Cir.

2001) (citing <u>Anderson</u>, 477 U.S. at 248-49).

> When the party moving for summary judgment would bear
> the burden of proof at trial, it must come forward with
> evidence which would entitle it to a directed verdict
> if the evidence went uncontroverted at trial.  In such
> a case, the moving party has the initial burden of
> establishing the absence of a genuine issue of fact on
> each issue material to its case.  Once the moving party
> comes forward with sufficient evidence, the burden then
> moves to the opposing party, who must present
> significant probative evidence tending to support its
> claim or defense.  A motion for summary judgment may
> not be defeated, however, by evidence that is merely
> colorable or is not significantly probative.

<u>C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.</u>, 213

F.3d 474, 480 (9th Cir. 2000) (citations, internal quotations

omitted).


**DISCUSSION**

The court now reaches the motions for partial summary

judgment.  Both motions seek judgments avoiding, either as

intentional or constructive fraudulent transfers, transfers of

the Debtors' ownership interests in the Hotel and the Marysville

Property from the Debtors to Simranjit and/or Simranjit's

entities.  Both motions are brought under 11 U.S.C. § 544(b) and

California's version of the Uniform Fraudulent Transfer Act

("UFTA") at California Civil Code § 3439.01 <u>et seq.</u>  Section

544(b) permits a Chapter 7 trustee to exercise the avoiding

powers conferred upon creditors under state law.[5]  Ezra v. Soror
(In re Ezra), 537 B.R. 924, 930 (9th Cir. BAP 2015) (California
UFTA) (citing Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221,
232 (9th Cir. BAP 2007), aff'd in part and adopted, 551 F.3d 1092
(9th Cir. 2008)); see also Decker v. Tramiel (In re JTS Corp.),
617 F.3d 1102, 1111 (9th Cir. 2010).

     The Hotel fraudulent transfer claims are alleged in the
First Claim for Relief (intentional fraudulent transfer) and the
Second Claim for Relief (constructive fraudulent transfer) of the
first amended complaint.  The Marysville Property fraudulent
transfer claims are alleged in the Fourth Claim for Relief
(intentional fraudulent transfer) and the Fifth Claim for Relief
(constructive fraudulent transfer) of the first amended
complaint.  To the extent any or all of the foregoing transfers
are avoided, the Seventh Claim for Relief in the first amended
complaint seeks judgment under § 550(a) recovering the
transferred property interests and/or properties for the benefit
of the Debtors' bankruptcy estate.[6]  If the transfer of the

_____

[5]In relevant part, § 544(b)(1) states:
[T]he trustee may avoid any transfer of an interest of
the debtor in property or any obligation incurred by
the debtor that is voidable under applicable law by a
creditor holding an unsecured claim that is allowable
under section 502 of this title or that is not
allowable only under 502(e) of this title.
11 U.S.C. § 544(b)(1).

[6]In relevant part, § 550(a) states as follows:
Except as otherwise provided in this section, to the
extent that a transfer is avoided under section 544
. . . of this title, the trustee may recover, for the
benefit of the estate, the property transferred, or, if the

1  Marysville Property is avoided and the Marysville Property

2  recovered, plaintiff also seeks cancellation of a deed of trust

3  that encumbers the property in the Sixth Claim for Relief of the

4  first amended complaint. And if less than all relief is granted,

5  plaintiff requests a determination under Civil Rule 56(g) of

6  facts not disputed for purposes of this adversary proceeding.

7  Docket 107 at 3:17-19.

8       The court considers each transfer in turn. However,

9  inasmuch as the court concludes there is a disputed material fact

10 with regard to the Hotel motion, the court need not set forth a

11 separate statement of undisputed facts for purposes of its

12 decision. Instead, the court discusses the relevant undisputed

13 facts necessary to explain the disputed material fact that

14 precludes the court from granting partial summary judgment.

15      As to the Marysville Property motion, the undisputed facts

16 that permit the court to grant partial summary judgment are set

17 forth in detail. The court determines there are no disputed

18 material facts that preclude partial summary judgment on the

19 plaintiff's claims for avoidance and recovery of the Marysville

20 Property free and clear of any purported liens or interests.

21

22 **I.  THE HOTEL**

23      A.  <u>Disputed Facts Remain</u>

24 _____

25      court so orders, the value of such property, from-
        (1) the initial transferee of such transfer or the
26      entity for whose benefit such transfer was made; or
        (2) any immediate or mediate transferee of such initial
27      transferee.
28 11 U.S.C. § 550(a).

Rajpal acquired ownership of the Hotel through Brightside in November of 2008. Dockets 104, 122 at SUF 2. Rajpal owned Brightside which owned the Hotel. Id. at SUF 3.

Brightside filed a voluntary Chapter 11 petition in the Northern District of Texas on September 10, 2014. Id. at SUF 8. Brightside operated as a debtor in possession during its bankruptcy proceeding. Id. at SUF 9. Rajpal listed himself as the president, sole shareholder, and $1,000,000 creditor on Brightside's schedules and statement of financial affairs. Id. at SUF 10. Rajpal also signed all monthly operating reports as Brightside's president. Id. at SUF 11.

The final hearing on confirmation of Brightside's Chapter 11 plan was held on May 19, 2015, at which time the Texas bankruptcy court verbally confirmed the plan. Id. at SUF 30. Under the terms of Brightside's confirmed plan, Rajpal's equity ownership in Brightside was cancelled and Simranjit acquired ownership of Brightside (and thus ownership of the Hotel) in exchange for a $60,000 capital contribution. Id. at SUF 32. Following the confirmation hearing Simranjit was the owner of Brightside/March-On Hospitality which owned the Hotel. Id. at SUF 34. Notably, nothing in Brightside's confirmed Chapter 11 plan indicates that Rajpal was released from debt owed to Stanford Federal Credit Union, the franchisor, SBA or vendors/other creditors, or that Simranjit assumed such liabilities. Id. at SUF 35A.

Plaintiff initially asserts that Rajpal transferred his ownership interest in the Hotel to Simranjit through Brightside's Chapter 11 plan with the actual intent to hinder, delay, or defraud creditors-Westates, LLC ("Westates") and the Small

13

Business Administration ("SBA") included.  Docket 105 at 15:1-28:21.  Plaintiff makes this claim under California Civil Code § 3439.04(a)(1).[7]

With no direct evidence of intent, plaintiff relies on several "badges of fraud" set forth in California Civil Code § 3439.04(b).[8]  Id.  The bankruptcy appellate panel in Wolkowitz,

---

[7]Section 3439.04(a)(1) states as follows:
(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
California Civil Code § 3439.04(a)(1).

[8]Section § 3439.04(b) states:
(b) In determining actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any or all of the following:
(1) Whether the transfer or obligation was to an insider.
(2) Whether the debtor retained possession or control of the property transferred after the transfer.
(3) Whether the transfer or obligation was disclosed or concealed.
(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(5) Whether the transfer was of substantially all the debtor's assets.
(6) Whether the debtor absconded.
(7) Whether the debtor removed or concealed assets.
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

374 B.R. 221, validated these badges of fraud in affirming summary judgment on the issue of whether a debtor/husband made an intentional fraudulent transfer under a marital settlement agreement. As it explained:

> The UFTA list of 'badges of fraud' provides neither a counting rule, nor a mathematical formula. No minimum number of factors tips the scales toward actual intent. A trier of fact is entitled to find actual intent based on the evidence in the case, even if no 'badges of fraud' are present. Conversely, specific evidence may negate an inference of fraud notwithstanding the presence of a number of 'badges of fraud.'

Id. at 236 (internal citations omitted).

Plaintiff relies on nine badges of fraud to establish an intentional fraudulent transfer of the Hotel under the California UFTA. Docket 105 at 19:1-26:20. That being the case, plaintiff bears the burden of proving by a preponderance of the evidence each badge relied upon. See Cal. Civ. Code § 3439.04(c).[9] So in the summary judgment context, plaintiff must establish the absence of a genuine factual dispute as to each badge. Plaintiff has not met that burden with respect a more significant badge. In particular, there remains a genuine dispute over whether the Debtors received from Simranjit value reasonably equivalent to the value of the ownership interest in the Hotel transferred to

---

(11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.
Cal. Civ. Code § 3439.04(b)

[9]Section 3439.04(c) states as follows:
A creditor making a claim for relief under subdivision (a) has the burden of proving the elements of the claim for relief by a preponderance of the evidence.
Cal. Civ. Code § 3439.04(c)

Simranjit through Brightside's confirmed Chapter 11 plan.[10]  <u>See</u>
<u>Wyle v. C.H. Rider & Family et al. (In re United Energy Corp.)</u>,
944 F.2d 589, 597 (9th Cir. 1991).

Plaintiff asserts that the Debtors received nothing-or zero value-from Simranjit in exchange for the transfer of Rajpal's ownership interest in the Hotel to Simranjit through Brightside's confirmed Chapter 11 plan.  Docket 104 at SUFs 35-36.[11] Defendants dispute that assertion (and SUFs 35-36 upon which it is based) stating that Rajpal obtained relief from debt owed to Stanford Federal Credit Union, the franchisor, vendors, and other creditors.  Docket 122 at 13:1-5, 8-9.  Defendants, however, cite only to Brightside's confirmed Chapter 11 plan as the source of the purported dispute.  <u>Id.</u>

Defendants' problem is that they do not dispute SUF 35A

_____

[10]This unresolved factual dispute also affects plaintiff's constructive fraudulent transfer claim under California Civil Code § 3439.05.  As plaintiff acknowledges, "[t]his badge is essentially the same as whether a person has received 'reasonably equivalent value' for purposes of analyzing whether a constructive fraudulent transfer has occurred."  Docket 105 at 23:24-26.  So if the intentional fraudulent transfer claim in the First Claim for Relief of the amended complaint fails summary judgment on this basis, then so too does the constructive fraudulent transfer claim in the Second Claim for Relief and all related claims in the Seventh, Eighth, and Ninth Claims for Relief.

[11]SUF #35 states as follows:
Under the terms of the Brightside plan as confirmed, Rajpal received nothing in exchange for the cancelation [sic] of his equity ownership in Brightside.
SUF #36 states as follows
In effect, Rajpal transferred his interest in Brightside to Simranjit for no consideration.
Dockets 104 at 9, 122 at 13.

16

which states as follows:   "There is nothing in the Brightside
Plan as confirmed to indicate that Rajpal was released from any
debt owed to Stanford Federal Credit Union, the franchisor, the
SBA or vendors/other creditors, or that Simranjit assumed any
liabilities to those creditors."   Docket 122 at 13:5-10.[12]   Thus,
having admitted that Brightside's confirmed Chapter 11 plan did
not release Rajpal from any debt owed to Stanford Federal Credit
Union, the franchisor, the SBA, vendors, or other creditors and
that Simranjit did not assume any such liabilities through
Brightside's confirmed Chapter 11 plan, Brightside's plan does
not support defendants' assertion of a genuine dispute concerning
SUFs 35-36.   SUFs 35-36 are therefore undisputed.

Inasmuch as SUFs 35-36 are undisputed the Debtors
effectively received nothing from Simranjit in exchange for
Rajpal's ownership interest in Brightside and, thus, for the
Hotel.   But that does not necessarily end the inquiry because the
court must still consider the value of what Rajpal gave up, *i.e.*,
Rajpal's ownership interest in the Hotel, and compare that to
what Rajpal received from Simranjit, *i.e.*, nothing.   Stated
another way, did Rajpal's ownership interest in the Hotel have
value and, if so, was that value reasonably equivalent to the
value that Simranjit gave Rajpal for Rajpal's Brightside
interest?   See Wyle, 944 F.2d at 597.   If Rajpal's ownership
interest in the Hotel had no value (or if it had a negative

---

[12]SUF 35A is also consistent with Rajpal's admission in his
deposition that he received nothing in exchange for his interest
in the Hotel, Docket 103, Ex. CC, pp. 56:5-7; 81:21-82:4, and
that he was not personally liable for Brightside's obligations.
Id., Ex. KK, pp. 3-4 (pp. 84-85).

17

1  value) then, conceivably, Rajpal received a reasonably equivalent

2  value for his Brightside interest from Simranjit.

3      On the question of the Hotel's value plaintiff submitted no

4  direct evidence to establish the value of the Hotel-and thence

5  the value of Rajpal's ownership interest in the Hotel-at the time

6  the interest was transferred to Simranjit through Brightside's

7  confirmed Chapter 11 plan, *i.e.*, May-June of 2015.  Rather,

8  plaintiff states that "there can be no doubt that the Hotel did

9  have a significant value."  Docket 105 at 24:9.  Plaintiff then

10 concludes that "the 'nothing' that Rajpal received (UF 53) is not

11 'reasonably equivalent' to the value of the Hotel, whatever that

12 value might have been (UF 54)."  Docket 105 24:18-19.  Plaintiff

13 reaches this conclusion based on an inference drawn from other

14 facts at or around the time of Brightside's Chapter 11 bankruptcy

15 filing and plan confirmation which include the following:

16      a.   Rajpal purchased the Hotel through Brightside in
        2008 for $5 million;

17

18      b.   Rajpal was able to illegitimately withdraw
        $103,200 from the Hotel without affecting its ability
        to reorganize;

19

20      c.   In December, 2018 (18 months after confirmation of
        the plan), Simranjit represented in a signed financial
        statement that the Hotel had a value of $6,000,000;

21

22      d.   In 2017, Simranjit obtained a new loan against the
        Hotel for $2.5 million, based in part on the lender's
        valuation of the Hotel at $5.8 million;

23

24      e.   Simranjit withdrew more than $800,000 from the
        Hotel in 2017 and 2018, in addition to his regular
        paychecks.

25

26 Docket 122 at 16:8-23 (SUF 52).  There are several problems with

27 plaintiff's argument.

28      In order to conclude that the Brightside interest-and thence

18

Rajpal's ownership interest in the Hotel-had *some* value the court must draw an inference *adverse* to the defendants.  Doing so flies in the face of the well-established summary judgment principle that inferences must be drawn in *favor* of the nonmoving party.

Arguably, it may be permissible to draw an inference adverse to the nonmoving party when the nonmoving party submits absolutely no evidence to dispute a moving party's fact and there is therefore nothing from which an inference favorable to the nonmoving party may be drawn.  See Mazalin v. Safeway, Inc., 2012 WL 5387704, *6 (E.D. Cal. 2012).  And the court did sustain plaintiff's objection to Brightside's bankruptcy schedules on which defendants rely to establish the Hotel's $1,750,000 value, to demonstrate Brightside's insolvency, and to show that Rajpal's ownership interest in the Hotel was valueless under defendants' version of the reasonably equivalent value analysis.  See Dockets 118 at 7:7-22, 122 at 16: 8-23 (SUF 52).  So it would seem that the court could rely on plaintiff's unchallenged "valuation" facts to infer that the Hotel-and thence Rajpal's ownership interest in it-did in fact have some value greater than zero when it was transferred to Simranjit.  But again, the analysis does not end there.

The court's ruling on the plaintiff's objection to defendants' use of Brightside's bankruptcy schedules goes to the form of the evidence, so the objection technically is correct. But evidence that is not submitted in a proper form at the summary judgment stage may be considered in ruling on a summary judgment motion if the evidence could be submitted in a form that would be admissible at trial.  Fraser v. Goodale, 342 F.3d 1032,

1036 (9th Cir. 2003) ("At the summary judgment stage, we do not
focus on the admissibility of the evidence's form. We instead
focus on the admissibility of its contents.") (citations
omitted). <u>Burch</u>, 433 F.Supp.2d at 1120 (citing <u>Fraser</u>, 342 F.3d
at 1037). So although Brightside's bankruptcy schedules may be
hearsay, the court may nevertheless consider the content of the
schedules in ruling on the Hotel motion because defendants may be
able to introduce that content in a form that is admissible at
trial. For example, as the Hotel's owner when Brightside's
petition was filed, Rajpal could authenticate the bankruptcy
schedules and testify as to the Hotel's value stated in the
schedules. <u>Enewally</u>, 368 F.3d at 1173; <u>Hughes v. United States</u>,
953 F.2d 531, 543 (9th Cir. 1992) (litigation adviser's affidavit
may be considered on summary judgment despite hearsay objection;
the facts underlying the affidavit are of the type that would be
admissible as evidence even though the affidavit itself might not
be admissible). Indeed, his declaration filed in support of
defendants' opposition states just that. Docket 120.

In short, the value of the Hotel is a material fact for
purposes of plaintiff's intentional and constructive fraudulent
transfer claims and a genuine dispute regarding that material
fact remains. That precludes the court from granting the Hotel
motion. Plaintiff's motion for partial summary judgment related
to Hotel will therefore be denied.

B.    "...as a matter of law..."

There is an alternative, and perhaps even more compelling,
reason for the court to deny the Hotel motion. Even if all of
plaintiff's facts, Hotel value included, are undisputed the court

has serious doubts that plaintiff is entitled to judgment as a matter of law on the First and Second Claims for Relief.

Plaintiff's Hotel allegations boil down to the assertion that Rajpal-and thence Brightside as a debtor in possession operated by Rajpal-committed fraud in the Brightside bankruptcy case, generally, and, specifically, in the context of the confirmation of Brightside's Chapter 11 plan.  The fraud pertains to the transfer of the Hotel ownership interest from Rajpal to Simranjit through Brightside's confirmed Chapter 11 plan.

Avoiding the transfer of Rajpal's ownership interest in the Hotel from Rajpal to Simranjit through this adversary proceeding on the basis of fraud in the plan confirmation process and vesting the ownership interest in an entity other than as ordered by the Texas bankruptcy court, at best, is tantamount to a modification of Brightside's confirmed Chapter 11 plan.  At worst, it is a de facto revocation of another bankruptcy judge's confirmation order over five years after the fraud occurred and the confirmation order entered.

A number of courts have recognized "§ 1144 [of the Bankruptcy Code] as the exclusive means by which a plan can be revoked, and § 1127 [of the Bankruptcy Code] as the exclusive means by which a plan can be modified."  In re Logan Place Properties, Ltd., 327 B.R. 811, 814 (Bankr. S.D. Tex. 2005). Indeed, very recently in Rosenstein & Hitzeman, AAPLC v. Eliminator Custom Boats, Inc. (In re Eliminator Custom Boats, Inc.), 2019 WL 4733525 (9th Cir. BAP 2019), the bankruptcy appellate panel explicitly stated that § 1144 is the exclusive means by which to revoke a confirmation order and § 1127(b) is

the exclusive means by which to modify a confirmed plan. Id. at

*9. Although unpublished, Rosenstein is highly persuasive.[13]

The point here is that there is one process under the

Bankruptcy Code for revoking a Chapter 11 confirmation order and

a separate process for modifying a confirmed Chapter 11 plan.

The de facto revocation of the Brightside confirmation order and

the modification of Brightside's confirmed Chapter 11 plan that

effectively results from undoing in this adversary what the Texas

bankruptcy court ordered and approved when it confirmed

Brightside's Chapter 11 plan is not that process.[14]  So even if

---

[13]With regard to revocation, the appellate panel cited Dale
C. Eckert Corp. v. Orange Tree Assoc., Ltd. (In re Orange Tree
Assocs., Ltd.), 961 F.2d 1445 (9th Cir. 1992), in which the Ninth
Circuit stated not once, but twice, that "[a]n order confirming a
Chapter 11 reorganization plan may be revoked **only** in accordance
with 11 U.S.C. § 1144[,]" id. at 1447 (emphasis added), and
"[S]ection 1144 is the **only** avenue for revoking confirmation of a
plan of reorganization." Id., n.6 (internal quotations and
citations omitted, emphasis added); accord In re Lothian Oil,
Inc., 508 Fed.Appx. 352, 353 (5th Cir. 2013) (recognizing § 1144
and possibly Bankruptcy Rule 9024 as only avenues available to
revoke confirmation order).  With regard to modification, the
appellate panel cited Alberta Energy Partners v. Blast Energy
Servs., Inc. (In re Blast Energy Servs., Inc.), 593 F.3d 418, 427
(5th Cir. 2010), in which the Fifth Circuit concluded that §
1127(b) is the exclusive means by which to modify a confirmed
plan.

[14]To the extent plaintiff alleges fraud in connection with
Brightside's confirmation proceedings, if anywhere, Texas rather
than California may be the better venue for the resolution of
that claim.  However, the court notes that both Circuits strictly
adhere to the 180-day revocation period in § 1144 even if fraud
is discovered after the 180-day period expires. Lopez v. Post-
Effective Date Committee of Creditors (In re Valley Health
System), 2012 WL 3205173, *5 (9th Cir. BAP 2012) (citing Orange
Tree, 961 F.2d at 1447); see also Diamond Enterprises Ltd., LP v.
Younessi (In re Younessi), 601 F.3d 815, 822 (9th Cir. 2019)

all of the facts that plaintiff asserts are undisputed are indeed
undisputed, the court is unable to conclude that plaintiff is
entitled to judgment as a matter of law on the First, Second, and
to the extent related, the Seventh, Eighth and Ninth Claims for
Relief in the amended complaint as they pertain to the fraudulent
transfer of the Hotel.  It may very well be that, to the extent
they concern the Hotel, plaintiff is not entitled to judgment on
those claims at all.  But for purposes of the present motion for
partial summary judgment on the Hotel motion, plaintiff's motion
is denied on this alternative basis.[15]

## II.   The Marysville Property

### A.   Undisputed Facts

Rajpal and Taranjit obtained title to the Marysville
Property as early as 1997.  Dockets 110, 127 at SUF 3.  The
Marysville Property is a commercial property across the street
from the Marysville courthouse with the top portion converted to
living space.  Id. at SUF 4.  The commercial space is currently
leased and some of the living space is leased to non-debtor third

---

(reaffirming Orange Tree's strong policy of finality of 180-day
revocation period even if fraud not discovered until after period
passed); accord Lothian Oil, 508 Fed.Appx. 352.

[15]Under the circumstances the court will exercise its
discretion to deny plaintiff's request to designate facts that
are undisputed for purposes of further proceedings.  See Fed. R.
Civ. P. 56(g); Fed. R. Bankr. P. 7056.  See also Rios v. Tilton,
2016 WL 29567, *4 n.5 (E.D. Cal. 2016) (noting that the trial
court has discretion under Civil Rule 56(g) to deny designation
of facts as undisputed to facilitate further development of the
case).

parties. _Id._ at SUF 5.

On July 7, 2009, Rajpal executed and recorded an interspousal deed pursuant to which he transferred his ownership interest in the Marysville Property to Taranjit. _Id._ at SUF 7. On July 12-13, 2012, Taranjit executed and recorded a quitclaim deed that transferred her ownership interest in the Marysville Property to Rajpal and Taranjit, husband and wife, as community property. _Id._ at SUF 9. As of July 13, 2012, the Debtors owned the Marysville Property. _Id._ at SUF 10.

Meanwhile, on June 19, 2012, the Debtors formed a limited liability company by the name of Pacific Coast Venture Management, LLC ("PCV"). _Id._ at SUF 11. The Debtors quitclaimed their interest in the Marysville Property to PCV on July 19, 2012. _Id._ at SUF 12.

On October 15, 2012, the Debtors transferred 50% of their interest in PCV to Simranjit. _Id._ at SUF 2, 13. On July 18, 2013, the Debtors transferred the remaining 50% of their interest in PCV to Simranjit. _Id._ at SUF 17. Both transfer documents state that the transfers were for $10 each and other good and valuable consideration. _Id._ at SUF 14, 18. Neither transfer was recorded with the secretary of state until December 7, 2015. _Id._ at SUF 40.

On July 18, 2013, Rajpal also resigned as PCV's Director, Manager, and Officer and Taranjit resigned as PCV's Director and Officer. _Id._ at SUF 19. Despite that resignation, on August 9, 2013, signing as PCV's Manager, Rajpal executed a deed of trust that purported to secure a $500,000 note in favor of Thrive, _id._ at SUF 20, which is wholly-owned by Simranjit. _Id._ at SUF 23.

24

No promissory note exists related to the deed of trust, _id._ at SUF 21, and no consideration was provided to PCV in exchange for the deed of trust that Rajpal executed in favor of Thrive. _Id._ at SUF 22. In 2015, Rajpal also wrote ten checks on PCV's bank account payable to himself and Taranjit. _Id._ at SUF 24.

The Debtors also had at least two significant creditors at and around the time they transferred their PCV interest to Simranjit in October 2012 and July 2013. In connection with the purchase of the Hotel discussed _infra_, in 2008 Rajpal obtained a $1,501,000 loan from the SBA. _Id._ at SUF 30. Rajpal personally guaranteed that loan. _Id._ at SUF 31. The SBA loan guarantee is unconditional in that it states: "Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor." _Id._ at SUF 32. According to plaintiff, that makes the SBA Rajpal's creditor. _Id._ at SUF 33. Defendants dispute the SBA's creditor status (and the SUF upon which the fact is based) but cite no evidence in the record (or elsewhere) to support the dispute. Docket 127 at 8:8-9 (re: SUF 33).

In 2012, the Debtors also had an interest in real property located at 31 Third Street, Marysville, California ("Third Street Property"). Dockets 110, 127 at SUF 34. The Third Street Property was collateral under a deed of trust for a $400,000 loan the Debtors obtained from Westates. _Id._ at SUF 34. The Debtors defaulted on their loan obligations to Westates in October of 2012 and, despite demand, failed or refused to pay Westates according to the terms of the loan documents. _Id._ at SUF 36. In 2013, Westates filed a lawsuit for judicial foreclosure and a deficiency judgment against the Debtors. _Id._ at SUF 37.

25

Westates ultimately obtained a foreclosure judgment and an order
of sale in October 2015, followed by a sheriff's sale of the
Third Street Property in 2016 and thereafter entry of a $573,506
deficiency judgment against the Debtors on December 1, 2016.  Id.
at SUF 38.

At about the same time, Simranjit, in a personal financial
statement submitted to Southwest Bank, represented that the value
of the Marysville Property was $800,000 and it had no
liabilities.  Dockets 110, 127 at SUF 25.  Simranjit also
represented to Southwest Bank that he paid nothing for the
Marysville Property.  Id. at SUF 26.  Defendants dispute SUF 26
but, again, they cite to no evidence in the record (or elsewhere)
to support the dispute.  Docket 127 at 7:7-22.  None.

Debtors eventually filed their Chapter 7 petition on August
11, 2017.  Dockets 110, 127 at SUF 1.  This adversary proceeding
followed on June 22, 2018.  Docket 1.

B.   Analysis

1.   No Genuine Issue

As a preliminary matter, the court addresses SUF 26
("Simranjit represented to Southwest Bank that he paid nothing
for the [Marysville Property].") and SUF 33 ("The SBA was
creditor of Rajpal Chatha in 2012 and 2013.") which defendants
assert are disputed.  Dockets 110 at 5:17-19 (SUF 26), 6:11-12
(SUF 33); 127 at 7:7-9 (SUF 26), 8:8-9 (SUF 33).  Without
weighing the evidence or assessing credibility, the court must
determine if defendants' dispute of SUFs 26 and 33 is "genuine"
or, in other words, if there is a genuine issue of material fact
that precludes summary judgment.  See Anderson, 477 U.S. at 249;

1  McDonald v. Yates, 2012 WL 6514658, *5 (E.D. Cal. 2012).

2      Civil Rule 56(c) requires the party asserting that a fact is
3  genuinely disputed to support its assertion that the fact is
4  disputed by citing to particular parts of materials in the
5  record, showing that the materials cited by the adverse party do
6  not establish the absence of a genuine dispute, or that the
7  adverse party cannot produce admissible evidence to support the
8  fact.  There is a similar obligation in Local Bankruptcy Rule
9  7056-1 which requires that with each denial of an undisputed fact
10  the nonmoving party must cite to the portion of the record relied
11  upon in support of the denial.  See Local Bankr. R. 7056-1(b).

12      Since plaintiff has produced admissible evidence in support
13  of SUFs 26 and 33, defendants are left with the option of citing
14  to evidence in the record or showing that the materials plaintiff
15  cites to support each undisputed fact do not establish the
16  absence of a genuine dispute.  In either case, defendants'
17  showing must be an evidentiary one.  Indeed, the Ninth Circuit
18  has long recognized in a variety of contexts that unsupported and
19  unsubstantiated conclusory statements (such as the ones upon
20  which defendants rely in response to SUFs 26 and 33) do not
21  create genuine issues of material fact capable of defeating a
22  valid motion for summary judgment.  Estate of Tucker ex rel.
23  Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1033 (9th Cir.
24  2008) (stating that "unsubstantiated assertions do not create a
25  triable issue of fact"); Hernandez v. Spacelabs Medical Inc., 343
26  F.3d 1107, 1112 (9th Cir. 2003) (stating that the nonmoving party
27  "cannot defeat summary judgment with . . . unsupported conjecture
28  or conclusory statements"); Taylor v. List, 880 F.2d 1040, 1045

(9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").[16] And, of course, it is the nonmoving party's burden to make the requisite evidentiary showing and not the court's obligation to search the record for evidentiary support of a disputed fact. <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996) ("As other courts have noted, it is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."); <u>see also</u> <u>Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec</u>, 854 F.2d 1538, 1545 (9th Cir. 1988) (per curiam) (affirming summary judgment and validating local rule that imposed affirmative burden on nonmoving party to list genuine issues with appropriate record cites).

As noted above, with regard to both undisputed facts at SUFs 26 and 33, defendants' asserted dispute is limited to statements that are not supported or substantiated by any citation to

---

[16]So too has the district court. <u>Parsons v. United States</u>, 360 F. Supp. 2d 1083, 1087 (E.D. Cal. 2004) ("If the moving party can meet his burden of production, the non-moving party must produce evidence in response.... [H]e cannot defeat summary judgment with . . . unsupported conjecture or conclusory statements."). And so too has the bankruptcy appellate panel. <u>Krishnanmurthy v. Nimmagadda (In re Krishnanmurthy)</u>, 209 B.R. 714, 721 (9th Cir. BAP 1997) (concluding that to survive adversary plaintiffs' summary judgment motion, debtor-defendants were obliged to produce some significant probative evidence; conclusory arguments unsupported by factual statements or evidence did not meet that burden).

evidence in the record or elsewhere. None. Docket 127 at 7:7-9 ("That portion of the financial statement was is [sic] not completed."), 8:8-9 ("The obligation owed to the SBA was a contingent obligation. No demand for payment had been made."). So then, what happens? Civil Rule 56(e) provides the court with several options. The court may give the nonmoving party an opportunity to properly address the fact, consider the fact undisputed for purposes of the motion, grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it, or issue any other appropriate order. See Fed. R. Civ. P. 56(e); Fed. R. Bankr. P. 7056.

In Beard v. Banks, 548 U.S. 521 (2006), the United States Supreme Court stated that a party opposing summary judgment who "fail[s] specifically to challenge the facts identified in the [moving party's] statement of undisputed facts . . . is deemed to have admitted the validity of [those] facts[.]". Id. at 527. This court reads the Supreme Court's statement in Beard as strong support for treating facts that are not properly challenged as undisputed. The court also notes that at no time after plaintiff filed his reply pointing out the absence of evidentiary support for SUFs 26 and 33 did defendants avail themselves of an opportunity to supplement or further support SUFs 26 and/or 33. See Local Bankruptcy Rule 9014-1(f)(1)(D) (party may seek leave to file additional response).

Because the extent of defendants' dispute of SUFs 26 and 33 are conclusory statements unsupported by any record citation or other evidentiary reference, and because the United States

29

Supreme Court has clearly indicated that facts not properly
challenged at the summary judgment stage are deemed admitted, the
dispute over SUFs 26 and 33 is not genuine.  That means SUFs 26
and 33 are undisputed for purposes of the Marysville Property
motion:  Simranjit paid nothing for the Marysville Property and
the SBA was Rajpal's creditor in 2012 and 2013.[17]

> 2.   Intentional Fraudulent Transfer

> a.   The Transfer

The term "transfer" under both the Bankruptcy Code and the
California UFTA is defined broadly to include nearly every mode
of disposing or parting with property or an interest in property.
See In re Tarkanian, 562 B.R. 424, 451 n.20 (Bankr. D. Nev. 2014)
(Bankruptcy Code); Sturm v. Moyer, 32 Cal. App. 5th 299, 308
(2019) (UFTA).  "The crux of the definition is that the debtor no
longer has the rights that the debtor possessed prior to the
event."  CIBC 19 East Greenway, LLC v. Bataa/Kierland LLC (In re
Bataa/Kierland LLC), 496 B.R. 183, 196-97 (D. Ariz. 2013).

The transfers here consist of the Debtors' October 2012 and
July 2013 transfers of their interest in PCV to Simranjit.  The
Debtors owned the Marysville Property.  They placed it into a
limited liability company and they thereafter gave Simranjit 100%
of their interest in the limited liability company which
effectively gave Simranjit ownership of the Marysville Property.
The first requirement of a fraudulent transfer, i.e., a
"transfer," is therefore satisfied.

---

[17]In any case, defendants "concede[] that Debtors had
creditors when they transferred Pacific Coast to Defendant."
Docket 124 at 9:25-28.

b.  <u>Badges of Fraud</u>

Plaintiff relies initially on the intentional fraudulent conveyance provision of the California UFTA found at California Civil Code § 3439.04(a)(1).  California Civil Code § 3439.04(b) lists eleven factors, otherwise known as "badges of fraud", that may be considered to establish actual intent to defraud.  <u>See</u> fn. 8, <u>supra</u>.  Five badges of fraud have been found to be sufficient on summary judgment to establish an actual intent to defraud.  <u>Wolkowitz</u>, 374 B.R. at 238-39.  At least six badges of fraud exist here.  And when considered in totality the court concludes they establish an intent by the Debtors to hinder, delay, or defraud creditors-the SBA and Westates included-by removing the Marysville Property from their reach.

(1)  The Debtors transferred their ownership interest in PCV to an insider.  Simranjit is Rajpal's and Taranjit's son and therefore an insider of the Debtors.  <u>See</u> Cal. Civ. Code § 3439.04(b)(1).

(2)  Rajpal retained control over PCV after the Debtors transferred their interest in PCV to Simranjit and after the Debtors resigned as principals of PCV.  Asserting himself to be PCV's Manager, Rajpal executed a deed of trust that purported to encumber the Marysville Property for Thrive's benefit.  Rajpal also continued to write and sign checks on PCV's bank account.  <u>See</u> Cal. Civ. Code § 3439.04(b)(2).

(3)  The Debtors' transfer of their interest in PCV were not disclosed and were effectively concealed.  Although the Debtors transferred one-half interest of their PCV interest to Simranjit in October 2012 and the other one-half in July 2013, neither

transfer was recorded with the secretary of state until December

2015. <u>See</u> Cal. Civ. Code § 3439.04(b)(3).

(4)  Defendants' defaulted on their Westates loan

obligations in 2012 when they failed and refused to make payments

as the loan documents required.  That default raised the specter

of litigation in that it gave Weststates a basis to sue the

Debtors.  Indeed, litigation materialized in 2013.  That lawsuit

resulted in a judgment of foreclosure entered against the Debtors

in October 2015 and a $573,506 deficiency judgment also entered

against the Debtors in January 2016. <u>See</u> Cal. Civ. Code §

3439.04(b)(4).

(5)  The Debtors did not receive reasonably equivalent value

from Simranjit for the interests in PCV transferred to Simranjit.

This analysis involves comparing what the Debtors gave to

Simranjit, <i>i.e.</i>, the value of their interest in PCV, and what the

Debtors received from Simranjit in exchange for what they

surrendered. <u>Wyle</u>, 944 F.2d at 597.  According to facts that are

undisputed, Simranjit received an asset from the Debtors worth,

in his own estimation, $800,000 (SUF 25) for, by his own

admission, nothing (SUF 26).

The court is aware that Simranjit filed a declaration in

support of defendants' opposition to the Hotel motion (but none

in support of defendants' opposition to the Marysville Property

motion). <u>See</u> Docket 119.[18]  Simranjit's declaration was filed as

---

[18]Simranjit's declaration at Docket 119 is identified by
docket control no. GJH-1 which is the initial motion for partial
summary judgment related to the Hotel.  The declaration was
apparently re-filed with defendants' opposition to the subsequent

the basis for the defendants' "Additional Undisputed Facts" which the court struck. Nevertheless, consistent with the <u>Center for Employment Training</u> decision, <u>supra</u>, the court considers Simranjit's declaration in the context of the Marysville Property motion despite defendants' attorney's sloppy practice of not filing it with (or citing to it for) the proper opposition.

The Ninth Circuit has long-recognized that "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." <u>FTC v. Publishing Clearing House</u>, 104 F.3d 1168, 1171 (9th Cir. 1997); <u>Amusement Art, LLC v. Life is Beautiful, LLC</u>, 768 Fed.Appx. 683, 686 (9th Cir. 2019) (skeletal and conclusory declaration insufficient to create genuine issue of material fact). As it pertains to the Marysville Property motion, Simranjit's declaration fits that bill. The declaration is riddled with conclusory, skeletal, and self-serving statements and neither the statements nor the declaration itself are supported by any admissible evidence. Therefore, the declaration does not create any genuine factual dispute.

To reiterate, it is undisputed that Simranjit acquired a property interest (and property) he valued at $800,000 from the Debtors for (in his own words) nothing. But in his declaration Simranjit states that he acquired the first 50% interest in PCV from the Debtors in exchange for "work and services" related to the Marysville Property and a negotiated deal that provided the

---

Hotel motion, which is docket control no. GJH-3, without change to the docket control number.

Debtors with debt relief. Simranjit similarly states that he acquired the second 50% interest also in exchange for the earlier "work and services" and a promise to the Debtors that they would have a life estate interest in the Marysville Property.

With regard to the initial 50% PCV interest that Simranjit received from the Debtors, he provides no detailed facts, and makes no attempt to even identify, what the purported "work and services" might be or how it constituted consideration.[19] And as to the purported "debt relief," Simranjit's own declaration states that he received the initial 50% interest as a "gift" from the Debtors which means, by his own admission, he received the initial interest for no consideration at all. As to the second 50% interest, again, the "work and services" consideration is not explained or identified. And as to the promised life estate, defendants have identified no documents in the record necessary to establish a life estate interest in property.

In short, to the extent it pertains to the Marysville Property, Simranjit's declaration does not create any genuine issue of fact. Therefore, consistent with the facts that are and have been determined to be undisputed, the Debtors did not receive reasonably equivalent value from Simranjit in exchange for the transfer of their interests in PCV to Simranjit. See Cal. Civ. Code § 3439.04(b)(8).

_____

[19]The court made a factual finding in the Westates adversary proceeding, Adv. No. 17-02205, that the Debtors could not identify the consideration in the form of work and services they purportedly received from Simranjit in exchange for their interests in PCV and, importantly, they had no records that any consideration existed. Docket 43 at 10:5-16, 16:25-28.

1    (6) Finally, the Debtors were insolvent at and around the

2    time they transferred their interest in PCV to Simranjit.

3    Insolvency is defined under California fraudulent transfer law as

4    follows: "A debtor that is generally not paying the debtor's

5    debts as they become due other than as a result of a bona fide

6    dispute is presumed to be insolvent." Cal. Civ. Code §

7    3439.02(b). That the Debtors admit in SUF 36 they defaulted on

8    their loan obligation to Westates in October 2012 and that

9    despite demand they failed or refused to pay Westates as required

10   is evidence the Debtors were not paying their obligations as they

11   came due and they were therefore insolvent. The court notes

12   defendants' contention in their opposition that "other facts ...

13   might lead a party to default on a loan, including a good faith

14   dispute with the lender or a formulate business plan." Docket

15   124 at 10:25-27. But, again, that assertion is unsupported by

16   any citation to evidence in the record or elsewhere. It is

17   nothing more than legal argument which is not evidence and does

18   not create any disputed issue of fact regarding the insolvency

19   presumption or otherwise. <u>Flaherty v. Warehousemen, Garage &</u>

20   <u>Service Station Employees' Local Union No. 334</u>, 574 F.2d 484, 486

21   n. 2 (9th Cir. 1978). <u>See</u> Cal. Civ. Code § 3439.04(b)(9).

22                   c.   <u>Conclusion Regarding Intentional Fraudulent</u>
                          <u>Transfer of the Marysville Property</u>
23
24        For the foregoing reasons, the court concludes that the

25   Debtors' transfer of their interest in PCV-and thence their

26   ownership of the Marysville Property-to Simranjit is (and was) an

27   intentional fraudulent transfer. While insolvent and under a

28   threat of litigation resulting from a loan default Debtors

                                 35

1  transferred their ownership interest in valuable real property to
2  Simranjit for no consideration and therefore for less than
3  reasonably equivalent value in an effort to place that property
4  outside the reach of their creditors.  Plaintiff's second motion
5  for summary judgment will therefore be granted and the Debtors'
6  transfer of their interest in PCV to Simranjit will be avoided in
7  its entirety as an intentional fraudulent transfer.

8      B.    Recovery
9  Following the avoidance of a § 544 transfer, the trustee may
10  recover from the initial transferee property transferred.  11
11  U.S.C. § 550(a).  That means, here, plaintiff will recover the
12  Debtors' interest in PCV and PCV's assets from Simranjit.
13  Simranjit will be ordered to execute any documents necessary
14  to transfer 100% of his interest in PCV to the plaintiff in his
15  capacity as the trustee of the Debtors' bankruptcy estate within
16  ten (10) days of the entry of judgment consistent with this
17  memorandum decision.  Failure to do so will be deemed to be a
18  contempt.  Additionally, should Simranjit fail to comply with the
19  court's order to transfer his interest in PCV to the plaintiff,
20  the court will entertain an *ex parte* application by the plaintiff
21  for authority to appoint another individual to execute any and
22  all necessary documents pursuant to Civil Rule 70(a) applicable
23  by Bankruptcy Rule 7070.

24      C.    The Sham Deed of Trust
25  Effective July 18, 2013, Rajpal resigned as PCV's Manager,
26  Director, and Officer and Tarinjit resigned as PCV's Director and
27  Officer.  Yet, on August 9, 2013, Rajpal, as PCV's Manager,
28  signed a deed of trust purporting to secure a note for $500,000

1  in favor of Simranjit's wholly-owned entity, Thrive.  Not only

2  did Rajpal lack the authority to execute the deed of trust on

3  August 9, 2013, but, "no promissory note exists related to the

4  deed of trust purportedly granted by Pacific Coast to Thrive

5  Management[,]" dockets 110, 127 at SUF 21, and no consideration

6  was given for the deed of trust by Thrive.  Id. at SUF 22.

7  Therefore, any lien created by the Thrive deed of trust is void,

8  cancelled, and set aside.  Plaintiff shall recover the Marysville

9  Property free and clear of any such lien.

10       D.   Defendants' Remaining Arguments Lack Merit

11       Defendants assert that plaintiff's recovery of the

12  Marysville Property and the Hotel is overreaching in the sense

13  that plaintiff would recover more than necessary to satisfy

14  claims of the Debtors' bankruptcy estate.  However, as noted

15  above, the Hotel motion is denied.  Defendants' over-reaching

16  argument is therefore without merit.  And so too is the

17  defendants' statute of limitations argument.

18       The statute of limitations for an intentional fraudulent

19  transfer claim under Cal. Civ. Code § 3439.04(a)(1) is found in

20  California Civil Code § 3439.09 which states that an action to

21  avoid the transfer is extinguished unless action is brought

22  "[u]nder paragraph (1) of subdivision (a) of Section 3439.04, not

23  later than four years after the transfer was made or the

24  obligation was incurred or, if later, not later than one year

25  after the transfer or obligation was or could reasonably have

26  been discovered by the claimant[.]"  Cal. Civ. Code § 3439.09(a).

27  The bankruptcy appellate panel in Ezra, 537 B.R. at 933,

28  construed the discovery provision of California Civil Code §

3439.09(a) to mean "that the one year period . . . does not
commence until the plaintiff has reason to discover the
**fraudulent nature of the transfer.**"   (Emphasis in original);
accord Luria v. Wolff, 2016 WL 1449536, *4-5 (C.D. Cal. 2016).

The earliest conceivable date that the plaintiff in his
capacity as the Chapter 7 trustee appointed in the Debtors'
bankruptcy case could have discovered the fraudulent nature of
the transfer of the Marysville Property is the Debtor's August
11, 2017, petition date.  That means under California Civil Code
§ 3439.09(a) the limitations period for the intentional
fraudulent conveyance claim alleged under California Civil Code §
3439.04(a)(1) did not run until August 11, 2018.  Plaintiff filed
the complaint that initiated this adversary proceeding on June
22, 2018.  The complaint is therefore timely under state law.

This adversary proceeding is also timely under § 546(a).[20]
Because plaintiff would have one year from the August 11, 2017,
petition date to file an action to avoid the transfer of the
Marysville Property under the California UFTA, the state law

---

[20]Section 546(a) of the Bankruptcy Code states as follows:
(a) An action or proceeding under section 544, 545,
547, 548, or 553 of this title may not be commenced
after the earlier of--
(1) the later of--
    (A) 2 years after the entry of the order for
relief; or
    (B) 1 year after the appointment or election of
the first trustee under section 702, 1104, 1163, 1202,
or 1302 of this title if such appointment or such
election occurs before the expiration of the period
specified in subparagraph (A); or
(2) the time the case is closed or dismissed.
11 U.S.C. § 546(a).

limitations period had not run on the petition date.  Many
courts, "including the Ninth Circuit, have held that if the
statute of limitations period governing a state-law fraudulent
transfer action has not yet expired on the petition date (or the
date the order for relief is entered, which is generally the same
date), the trustee may bring an action under [Section] 544(b),
provided it is filed within the 546(a) limitations period."  Rund
v. Bank of Am. Corp. (In re EPD Inv. Co., LLC), 523 B.R. 680, 686
(9th Cir. BAP 2015).  Plaintiff therefore had two years from the
petition date, or until August 11, 2019, within which to file an
avoidance action under the Bankruptcy Code.  Filed on June 22,
2018, the complaint that initiated this adversary proceeding is
therefore timely under federal law.

**Conclusion**

For all the foregoing reasons, plaintiff's motion for
partial summary judgment on the First and Second (and all other
related) Claims for Relief which concern an intentional and
constructive fraudulent transfer of the Hotel is **DENIED**.
Plaintiff's second motion for partial summary judgment on the
Fifth Claim for Relief which concerns a constructive fraudulent
transfer of the Marysville Property is also **DENIED AS MOOT**.

Plaintiff's second motion for partial summary judgment on
the Fourth Claim for Relief which concerns an intentional
fraudulent transfer of the Marysville Property, the Sixth Claim
for Relief which concerns the cancellation of the sham deed of
trust that encumbers the Marysville Property, and the Seventh
Claim for Relief which concerns the recovery of the Marysville
Property for the benefit of the Debtors' bankruptcy estate is

**GRANTED** and judgment on those claims for relief in the amended
complaint will be entered for plaintiff and against defendants.
The transfer of the ownership interest in the Marysville Property
resulting from the Debtors' transfer of their interest in PCV to
Simranjit is **AVOIDED**, the Debtors' PCV interest (and thence
ownership of the Marysville Property) shall be **RECOVERED** by
plaintiff from Simranjit for the benefit of the Debtors'
bankruptcy estate.  Plaintiff's recovery of the Debtors' interest
in PCV shall be free and clear of any lien in favor of or claimed
(or that may be claimed) by Thrive and any such lien on the
Marysville Property is **VOID**, **SET ASIDE**, and **CANCELLED**.

Within ten (10) days of the entry of this memorandum
decision and any corresponding order and judgment, Simranjit
shall execute any and all documents necessary to convey his 100%
interest in PCV and all of PCV's assets to plaintiff in his
capacity as the Chapter 7 trustee appointed in the Debtors'
bankruptcy estate.

The continued hearing on October 8, 2019, at 9:30 a.m. will
be **VACATED**.

A separate order and judgment will enter.

Dated: October 8, 2019.

UNITED STATES BANKRUPTCY JUDGE

1

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

2

3

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

4

Christopher D Hughes
621 Capitol Mall #2500
Sacramento CA 95814

5

6

Gregory J. Hughes
3450 Palmer St., #4-283
Cameron Park CA 95682

7

8

W. Steven Shumway
3400 Douglas Blvd., Suite 250
Roseville CA 95661

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28