**FILED**

AUG 09 2021

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1    **UNITED STATES BANKRUPTCY COURT**

2    **EASTERN DISTRICT OF CALIFORNIA**

3

In re:                                    )  Case No. 17-25335-B-7
4                                          )
RAJPAL SINGH CHATHA and                    )  Adversary No. 18-2102
5    TARANJIT KAUR CHATHA,                 )
                                           )
6                      Debtor(s).          )
                                           )
7    _____)
                                           )
8    DOUGLAS WHATLEY, Chapter 7            )
     Trustee,                              )
9                                          )
                                           )
10                   Plaintiff(s),         )
                                           )
11   v.                                    )
                                           )
12   SIMRANJIT CHATHA; THRIVE              )
     MANAGEMENT LLC; SUMMERFEST            )
13   HOSPITALITY, LLC,                     )
                                           )
14                                         )
                     Defendant(s).         )
15   _____)

16
                **FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL**
17

18        The matter having been tried to the court on regular notice,

19   and after consideration of all properly admitted evidence as well

20   as argument thereon, the court makes the following findings of

21   fact and conclusions of law.  See Fed. R. Civ. P. 52(a); Fed. R.

22   Bankr. P. 7052.  Based on these findings of fact and conclusions

23   of law, the court will enter judgment for plaintiff Douglas

24   Whatley, in his capacity as the trustee appointed in the parent

25   chapter 7 bankruptcy case, and against defendants Simranjit

26   Chatha, Thrive Management, LLC, and Summerfest Hospitality, LLC,

27   to the extent explained below.

28

Findings of Fact

1. The complaint that initiated this adversary proceeding was filed on June 22, 2018. The Third Amended Complaint ("TAC") filed on September 17, 2020, is the operative complaint.

2. Rajpal Singh Chatha and Taranjit Kaur Chatha are the debtors in the parent chapter 7 case which was filed on August 11, 2017 ("Petition Date").

3. Defendant Simranjit Chatha is Rajpal's and Taranjit's son.[1] Defendants Thrive Management, LLC, and Summerfest Hospitality, LLC, are limited liability companies owned and controlled by Simranjit.

4. Plaintiff is the duly-appointed trustee in Rajpal's and Taranjit's chapter 7 case.

5. This is an action to avoid transfers and to recover transferred interests, properties, rents, and profits from the defendants. The TAC alleges that the transfers subject to avoidance are either prepetition fraudulent transfers or unauthorized postpetition transfers.

6. One significant transfer at issue is the transfer of Rajpal's interest in Brightside Hospitality, LLC, a Texas Limited Liability Company ("Brightside"), and its principal asset to Simranjit. Brightside's principal asset is a La Quinta Hotel located at 1503 Breckinridge Road, Mansfield, Texas ("Hotel"). Among others, documents relevant to this transfer include an

---

[1]The three individuals relevant to this adversary proceeding share the same last name. When necessary and for purposes of clarity, the court will refer to the individuals by their first names. No disrespect is intended.

*Agreement for Sale of Seller's Membership Interest in LLC* and a corresponding *Bill of Sale for Seller's Membership Interest in Company* (collectively, "Brightside Transfer Documents"). The Brightside Transfer Documents are dated, and dated to be effective as of, June 2, 2015. [TAC A, B; 16, 17]. The Brightside Transfer Documents are (and were intentionally) backdated. Simranjit's attorney, Karen Schroeder ("Ms. Schroeder") of Midland, Texas, drafted the documents and emailed them to Simranjit on December 22, 2017. [84, 86]. Simranjit testified that he signed the documents in early January 2018 and thereafter sent them to Rajpal.

7. Another significant transfer at issue is the transfer of Rajpal's and Taranjit's interest in Pacific Coast Ventures Management, LLC, a California Limited Liability Company ("PCV"), and its principal asset to Simranjit. PCV's principal asset is improved real property located at 513 B Street, Marysville, California, which consists of commercial and residential space ("Marysville Property"). Among others, documents relevant to this transfer include an *Agreement for Sale of Seller's Membership Interest in LLC* and a *Bill of Sale for Seller's Membership Interest in Company* dated, and dated to be effective as of, October 15, 2012, as to a 50% interest [TAC D, E; 26, 27] and an *Agreement for Sale of Seller's Membership Interest in LLC* and a *Bill of Sale for Seller's Membership Interest in Company* dated, and dated to be effective as of, July 18, 2013, as to a 50% interest (collectively, "PCV Transfer Documents") [TAC F, G; 29, 30]. The PCV Transfer Documents are (and were also intentionally) backdated. Ms. Schroeder drafted the documents

1  and emailed them to Simranjit on January 8, 2018.  [84, 96].

2  Simranjit testified that he signed the documents in early January

3  2018 and thereafter sent them to Rajpal.

4      8.   Other transfers at issue include transfer of the Hotel

5  from Brightside to Summerfest, Rajpal's transfer of funds from

6  Brightside's bank account to Simranjit, and additional transfers

7  of funds from Brightside and PCV to Simranjit.

8      9.   Rajpal formed Brightside as the sole Manager and Member

9  on or about April 11, 2007.  [189].

10     10.  On September 10, 2014, Brightside filed a voluntary

11 chapter 11 petition in the United States Bankruptcy Court for the

12 Northern District of Texas ("Texas Bankruptcy Court").

13     11.  For reasons related to franchise branding and

14 trademarks, through its chapter 11 bankruptcy case Brightside

15 changed its name to March on Hospitality, LLC ("MOH"), effective

16 May 13, 2015.  Brightside and MOH are the same entity.  The

17 parties referred extensively throughout this adversary proceeding

18 to the entity that owned the Hotel as Brightside.  The court will

19 do the same for purposes of continuity and clarity.  References

20 to Brightside are therefore reference to MOH and vise versa.

21     12.  Brightside's *Fourth Amended Plan of Reorganization*

22 *Dated May 22, 2015* ("Plan") was confirmed by a June 1, 2015,

23 *Amended Order Confirming Debtor's Fourth Amended Plan of*

24 *Reorganization Dated May 22, 2015* ("Confirmation Order").  [67].

25 The Plan includes two sections designated "5.07."  The Second §

26 5.07 is the applicable and it states as follows:

27          On the Effective Date, all equity interests shall be
            cancelled.  The new equity interests in the Debtor
28          shall be issued 100% to Simranjit Chatha who is

                                - 4 -

contributing to the Debtor $60,000.00 total. These
funds shall be deposited into the Debtor's counsel's
trust account prior to the Confirmation Date. If the
Plan is not Confirmed, the $60,000.00 will be returned
to Simranjit Chatha.

13. The court must resolve an initial factual dispute over
the operative "transfer" subject to avoidance as it pertains to
the transfer of Rajpal's interest in Brightside and its assets to
Simranjit and thence the ownership of the Hotel.

14. Defendants assert that the Plan and Confirmation Order
are self-executing and are the operative "transfer" of the
Brightside interest and its assets from Rajpal to Simranjit.
Defendants also assert that the court can not avoid this
"transfer" because doing so would be an impermissible
modification of the Plan under 11 U.S.C. § 1125 and/or an
impermissible revocation of the Confirmation Order under 11
U.S.C. § 1144.

15. Plaintiff asserts that the operative "transfer" of
Rajpal's interest in Brightside and its assets to Simranjit
occurred pursuant to a sale independent of the Plan and
Confirmation Order. More precisely, plaintiff asserts that the
Brightside Transfer Documents are the operative "transfer."

16. The dispute over the operative "transfer" resulted in
this court's March 2020 amended order transferring venue of this
adversary proceeding to the Texas Bankruptcy Court. On the basis
of this court's concurrent jurisdiction to interpret the Plan,
that the outcome of this adversary proceeding will have no
adverse effect on Brightside's estate or any of Brightside's
former creditors, and no further proceedings are necessary in
Brightside's now-closed bankruptcy case, the Texas Bankruptcy

Court transferred this adversary proceeding back to this court by
orders filed in July and August 2020.

17.  There were also related discovery proceedings before
the United States District Court for the Northern District of
Texas ("Texas District Court").  The discovery proceedings
concerned an October 2019 subpoena for the production of
documents and deposition testimony that plaintiff served on Ms.
Schroeder.  Ms. Schroeder represented Rajpal and Simranjit with
regard to Brightside and PCV, the Brightside and PCV Transfer
Documents, and related corporate matters.

18.  For the most part, Rajpal, Simranjit, and Taranjit are
not credible witnesses.  Their memories are selective.  When
testifying at trial, these individuals were able to easily
remember events beneficial to their interests.  They could not,
and often would not, remember events potentially detrimental or
adverse to their interests.  For example, Rajpal and Simranjit
were able to clearly recall events that occurred in 2015 and,
yet, were unable or unwilling to recall significant events that
occurred several years later in 2017 and 2018.

19.  With regard to Rajpal in particular, at times his trial
testimony was conflicting and contradictory.  He would say one
thing and then say something completely different when pressed.
For example, at one point he testified that potentially relevant
corporate documents were destroyed and then recanted when
questioned by the court.  He also testified that he signed
earlier versions of the Brightside and PCV Transfer Documents
and, again, when pressed by the court he testified that no such
documents ever existed.

20.   The court also notes that Rajpal and Simranjit feigned ignorance for years as to when and by whom the Brightside Transfer Documents and the PCV Transfer Documents were drafted and when the documents were signed.  It was only after the Texas District Court ordered Ms. Schroeder to produce nearly all documents that plaintiff subpoenaed and Ms. Schroeder was deposed about the documents she produced that Simranjit suddenly recalled that Ms. Schroeder drafted the Brightside Transfer Documents and the PCV Transfer Documents between December 2017 and January 2018, that he received the documents from Ms. Schroeder during that same time frame, and that he signed the documents in early January 2018.  In other words, the court is convinced that the Texas District Court's order denying Ms. Schroeder's motion to quash plaintiff's subpoena left Simranjit with no choice but to admit that the Brightside Transfer Documents and the PCV Transfer Documents were intentionally backdated insofar as they were created, received, and signed years after the Plan was confirmed and months after the Petition Date.

21.   Legitimate business transactions do not involve intentionally backdated documents.  Questionable ones do.

22.   After hearing the trial testimony, reviewing exhibits, and considering and weighing the evidence admitted at trial, the court concludes that the operative "transfer" of Rajpal's interest in Brightside and its assets to Simranjit subject to avoidance in this adversary proceeding is not the Plan or the Confirmation Order and is the transaction that occurred under the Brightside Transfer Documents.  Substantial evidence that is credible, reliable, and probative supports this conclusion.

- 7 -

23.  A confirmed chapter 11 plan can be self-executing with regard to the termination of equity interests.  <u>See</u> 11 U.S.C. § 1141(d)(1)(B).  However, a self-executing termination is inapplicable if the plan or confirmation order provide otherwise. <u>Id.</u>  There is overwhelming evidence here that the Plan and Confirmation Order provide otherwise and that Rajpal and Simranjit understood that the Plan and Confirmation Order provided otherwise.  In other words, there is overwhelming evidence that the Plan and Confirmation Order were not, and were not understood to be, a self-executing transfer of Rajpal's interest in Brightside and its assets to Simranjit.  There are four independent fact-based grounds which support this finding.

A.  **First,** evidence admitted at trial establishes that Rajpal retained an interest in Brightside and remained Brightside's Manager after the Plan was confirmed and on the Petition Date.  This finding is substantial evidence that the Plan was not a self-executing transfer of the interest from Rajpal to Simranjit and, in reality, the Plan transferred nothing to Simranjit.  This factual finding is based on the following evidence:

(1)  At Rajpal's request, Ms. Schroeder drafted a *Company Agreement of Brightside Hospitality LLC, a Texas Limited Liability Company* in 2013.  [79, 80].  The company agreement listed Rajpal as the sole Manager and Member.  It also provided that, as Manager, Rajpal had the "sole and exclusive" control over Brightside's management and financial affairs including, but not limited to, the "sole and exclusive" authority to dispose of Brightside's assets.

1       (2)   Rajpal met with Ms. Schroeder in November
2   2015.  [81A].  Rajpal testified that he told Ms. Schroeder about
3   Brightside's chapter 11 bankruptcy case.  Ms. Schroeder testified
4   the same.  Based on the bankruptcy case information that Ms.
5   Schroeder received from Rajpal, on December 16, 2015, Ms.
6   Schroeder drafted, and on December 17, 2015, she emailed Rajpal,
7   an amended company agreement which reflected Brightside's new
8   name, *i.e.*, MOH.  [81A].  The 2015 version of the company
9   agreement retained the provisions that gave Brightside's Manager
10  "sole and exclusive" authority over Brightside's finances and the
11  disposition of its assets.  [A; 73].

12      (3)   On December 17, 2015, Ms. Schroeder also
13  drafted and emailed Rajpal a *Unanimous Written Consent (In Lieu*
14  *of Annual Meeting) of the Manager and Member of March on*
15  *Hospitality LLC, a Texas Limited Liability Company* for 2015.
16  [B].  Ms. Schroeder testified that she prepared this document
17  based on information about Brightside's bankruptcy case that she
18  received from Rajpal.  Notably, these 2015 annual minutes, which
19  were prepared some six months after Plan confirmation, "RESOLVED,
20  that Rajpal Singh Chatha remains the *sole* Manager of the
21  Company."  (Emphasis added).  [B; 81A, 83].

22      (4)   In her December 17, 2015, email Ms. Schroeder
23  also told Rajpal that, as of the date of her email, he remained
24  Brightside's Manager according to Texas Secretary of State
25  records.  [A, B].

26      (5)   Simranjit testified that Texas Secretary of
27  State records continued to show Rajpal as Brightside's sole
28  "Managing Member" as of November 29, 2017.  [192].

- 9 -

(6)   Simranjit retained Ms. Schroeder as his attorney on December 19, 2017.  [84].  Ms. Schroeder confirmed this in her testimony.

(7)   On the same date that Ms. Schroeder drafted and emailed Simranjit the Brightside Transfer Documents, *i.e.*, December 22, 2017, Ms. Schroeder also drafted and sent Simranjit revised versions of the 2015 *Unanimous Written Consent (In Lieu of Annual Meeting) of the Manager of March on Hospitality LLC, a Limited Liability Company* and a *First Amended & Restated Company Agreement of March on Hospitality, a Texas Limited Liability Company*.  [84, 86].  The 2017 version of the 2015 annual minutes removed references to Rajpal as Manager, identified Simranjit as the Manager, and removed Rajpal's signature line leaving only Simranjit's signature line.  [86].  The 2017 amended version of the company agreement replaced Rajpal's signature line with Simranjit's signature line.  [Id.]

(8)   The 2017 version of the 2015 annual minutes was backdated to appear as if effective December 31, 2015, and the 2017 version of the company agreement was backdated to appear as if effective June 2, 2015.  [86].  Inasmuch as these 2017 versions of the 2015 documents were not drafted until December 22, 2017, as Simranjit conceded in his trial testimony, they were not signed on the backdated dates because they did not exist on those dates, or on the Petition Date for that matter.

(9)   Because the 2017 versions of the 2015 annual minutes and company agreement were not drafted until December 22, 2017, and thus were drafted after the Petition Date, Rajpal remained Brightside's sole Manager with "sole and exclusive"

- 10 -

authority over Brightside's finances after the Plan was confirmed
and at least through the Petition Date.[2]  During that same time
period Rajpal also retained "sole and exclusive" authority as
Manager to dispose of Brightside's assets.

          (10) The documents that Ms. Schroeder drafted and
emailed to Rajpal on December 22, 2017, also included a
*Resignation of Director and Officer*, backdated to June 2, 2015,
pursuant to which Rajpal purported to resign his position as
MOH's Manager effective as of the backdated date, [86], and a
*Certificate of Amendment to the Certificate of Formation of March
on Hospitality, a Texas Limited Liability Company*, which deleted
the provision in Brightside's original formation certificate that
identified Rajpal as "Manager 1," and replaced it with a new
provision that identified Simranjit as "Manager 1." [85].  Again,
drafted on December 22, 2017, these documents did not exist on
their purported dates, effective dates, or on the Petition Date.
Moreover, the amending certificate was not recorded with the

---

[2]Rajpal made the following withdrawals from Brightside's
Chase account ending in 1408 after the Plan was confirmed and
before the Petition Date: $99,000.00 on June 8, 2015; $50,000.00
on July 8, 2015; and $104,000.00 on July 14, 2015.  [141, 194].
He also withdrew $145,718.95 after the Petition Date, on
September 29, 2017, which he testified he gave to Simranjit in
the form of a cashier's check.  [22, 194].  Simranjit testified
that he received these funds between September 29-30, 2017.
     Plaintiff has also alleged that Simranjit took $828,000.00
in non-salary withdrawals from Brightside.  Although Simranjit
testified that he took the non-salary withdrawals he did not
recall the amount taken.  The court does not believe Simranjit.
Nevertheless, plaintiff's evidence regarding the amount of the
non-salary withdrawals is inconclusive and does not establish the
precise dollar amount taken.  Plaintiff therefore has not met his
burden of proving the amount of the non-salary withdrawals.  Same
with the $132,000.00 that was allegedly withdrawn from PCV.  The
evidence is inconclusive as to a precise dollar amount.

Texas Secretary of State until January 4, 2018. [45]. Rajpal testified that he understood that the amending certificate was the document that formally terminated his role and authority as Brightside's Manager.

Although this finding is based on the evidence admitted at trial it is also consistent with a critical factual finding in the March 26, 2019, memorandum decision filed after trial in the Westates Adversary Proceeding ("Westates AP") - which is the adversary proceeding in which Rajpal and Taranjit lost their discharge. [141]. On page 8, lines 6-9, of the memorandum decision this court found that Rajpal retained an ownership interest in Brightside consisting of a managerial and beneficial interest after the Plan was confirmed.[3]

The old saying that "actions speak louder than words" is applicable here. The Plan is essentially a contract and is

---

[3]The Westates AP memorandum decision was admitted into evidence without defendants' objection and the Westates AP is related to this adversary proceeding insofar as it involves the same individuals, the same properties, and arises out of the same parent chapter 7 case. Judicial notice of the memorandum decision for purposes of trial in this adversary proceeding is therefore appropriate. Lowe v. McDonald, 221 F.2d 228, 230-31 (9th Cir. 1955) (court may take judicial notice of its own records in another and distinct case for purposes of trial in a related case or when prior proceedings are introduced into evidence). Moreover, applicable facts found in the adversary proceeding and consistent with evidence here are conclusively established and therefore undisputed insofar as the memorandum decision was not timely appealed. Chatha v. Westates Holdings, LLC, 2020 WL 2991775 (9th Cir. BAP June 1, 2020). The court may also take judicial notice of undisputed facts in its own records. Teixeira v. County of Alameda, 873 F.3d 670, 676 n. 6 (9th Cir. 2017); Forte v. County of Merced, 2013 WL 3282957 at *2 (E.D. Cal. June 27, 2013) ("[A] court may take judicial notice of undisputed facts contained in a public document such as a court filing and may rely on those facts as if they are true.").

construed as such.  <u>Hillis Motors v. Hawaii Auto. Dealers' Ass'n</u> <u>(In re Hillis Motors)</u>, 997 F.2d 581, 588 (9th Cir. 1993); <u>The</u> <u>Official Creditors Committee of Stratford of Texas, Inc. v.</u> <u>Stratford of Texas, Inc. (In re Stratford of Texas, Inc.)</u>, 635 F.2d 365, 368-69 (5th Cir. 1981).  Rajpal's actions after the Plan was confirmed are an accurate indicator of what the words in the Plan meant and how Rajpal understood and interpreted those words.  And by retaining his Brightside interest and remaining Brightside's Manager for several years after the Plan was confirmed, Rajpal effectively understood that the Plan did not operate as a self-executing transfer of his interest in Brightside and its assets to Simranjit.  Indeed, as one court explained:

> [A]s a general matter, acts of the parties that are subsequent to the execution of the contract and before any controversy has arisen, may be looked to in determining the meaning of a contract. []  This rule of practical construction is predicated on the common sense concept that actions speak louder than words[.]  When the parties to a contract perform under it and demonstrate by their conduct that they knew what they were talking about the courts should enforce that intent. [].

<u>Scotty of California, Inc. v. Evenflow Company, Inc.</u>, 2006 WL 8455622 at *4 (S.D. Cal. July 26, 2006) (internal citations and quotations omitted).

Rajpal's and Simranjit's actions demonstrate that the Plan in fact transferred nothing to Simranjit.

B.    **Second**, the Plan and the Brightside Transfer Documents describe dramatically different processes for getting Rajpal's interest in Brightside and its assets to Simranjit. Whereas the Plan provides for a cancellation and issuance of

equity, the Brightside Transfer Documents provide for a transfer
by way of a sale.

The distinction is critical because one of the
Brightside Transfer Documents – the *Brightside Sale Agreement* –
has an integration clause which, paraphrased, states that it,
*i.e.*, the sale agreement, controls if there is any conflict
between it, *i.e.*, the sale agreement, and any other agreement,
*i.e.*, the Plan, between the parties, *i.e.*, Rajpal and Simranjit,
regarding the subject matter of the sale agreement, *i.e.*, getting
Rajpal's interest in Brightside and its assets to Simranjit.  So
there are effectively two contracts that conflict as to the
process of transferring Rajpal's interest in Brightside and its
assets to Simranjit:  (1) one is a purported self-executing
"cancellation" and "issuance" under the Plan; and (2) the other
is a sale independent of the Plan.  The latter controls.

C.  **Third**, whereas the confirmation order is dated and
was entered on June 1, 2015, the Brightside Transfer Documents
were drafted to be effective June 2, 2015.  That date difference
has to be considered in the context of relevant testimony.

Ms. Schroeder testified that she prepared the
Brightside Transfer Documents based on information about
Brightside's bankruptcy she received from Simranjit.  That
Simranjit told Ms. Schroeder that the relevant transaction
occurred on a date different than the Plan confirmation date is
indicative of Simranjit's understanding that he did not acquire
the interest in Brightside and its assets by a self-executing
process, simultaneously with Plan confirmation, or upon entry of
the Confirmation Order.

D. **Fourth**, if the process of transferring Rajpal's interest in Brightside and its assets to Simranjit was self-executing under the Plan, and if the Plan and Confirmation Order so provided, no other documents or documentation would have been necessary. That Simranjit retained Ms. Schroeder and that Ms. Schroeder prepared additional documents to effectuate a transfer of the interest is inconsistent with a self-executing process under the Plan or Confirmation Order.

24. In sum, the Plan and Confirmation Order are not the operative "transfer" subject to avoidance. The Brightside Transfer Documents are the operative "transfer" subject to avoidance. In other words, the transfer of Rajpal's interest in Brightside and its assets to Simranjit occurred independent of the Plan and the Confirmation Order. And as explained below, the transfer occurred after the Petition Date. Whereas the Plan and Confirmation Order gave Rajpal the authority and obligation to transfer his interest in Brightside and its assets to Simranjit, the Brightside Transfer Documents, which were drafted and signed after the Petition Date, are the operative documents that effectuated the transfer under the facts and for purposes of this adversary proceeding.

25. In reaching this conclusion the court is aware of allegations in earlier renditions of the complaint that the operative "transfer" was or occurred through the Plan and Confirmation Order. The court is also aware that prior allegations can be treated as judicial admissions. American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988). However, the Ninth Circuit is clear that prior

- 15 -

1  allegations should be treated as judicial admissions only when

2  and to the extent they remain unexplained or unamended when there

3  is an opportunity to do either.  Sicor Ltd. v. Cetus Corp., 51

4  F.3d 848, 859-60 (9th Cir. 1995); see also Provident Energy

5  Assoc. of Montana v. Bullington, 77 Fed.Appx. 427, 430 (9th Cir.

6  2003).  Prior allegations here regarding the operative "transfer"

7  have been explained and were amended upon the discovery of

8  evidence the defendants and their attorneys initially failed and

9  refused to disclose when requested or subpoenaed, attempted to

10 suppress when discovered, and produced (both as to documents and

11 deposition testimony) only after they were ordered to do so by

12 the Texas District Court.  Prior allegations that the Plan and

13 Confirmation Order are the operative "transfer" subject to

14 avoidance are therefore not accorded any weight as judicial

15 admissions- or otherwise.

16     26.  Transfer of Rajpal's interest in Brightside and its

17 assets to Simranjit also implicates a transfer of the Hotel as

18 Brightside's principal asset from Brightside to Summerfest.  On

19 August 7, 2017, Simranjit, apparently on Brightside's behalf,

20 executed a *General Warranty Deed* that purported to convey the

21 Hotel from Brightside to Summerfest.  [188].  The property being

22 conveyed is described as follows:

23     Being Lot 5R-1, in MANSFIELD DEBBIE LAND ADDITION, an
        addition to the City of Mansfield, Tarrant County,
24     Texas, according to the plat thereof recorded in
        Cabinet A, Slide 11457, Plat Records, Tarrant County,
25     Texas.

26     27.  Relevant to the transfer of the Hotel from Brightside

27 to Summerfest, the court made the following factual finding in

28 the Westates AP memorandum decision:

- 16 -

Tarrant County (Texas) Recorder records reflect that four days after the Petition Date, on August 15, 2017, a General Warranty Deed, document no. D217187705, signed by Simranjit, conveying 'Lot 5R 1, in MANSFIELD DEBBIE LANE ADDITION' from Brightside to a newly formed entity, Summerfest Hospitality, LLC, a Texas limited liability company, was recorded. According to the Tarrant County (Texas) Assessor 'MANSFIELD DEBBIE LANE ADD Lot 5R1' corresponds with an address at 1503 Breckenridge Road, Mansfield, Texas, which is the address of the La Quinta [Hotel].

[141 at 8, n.5].

28. The PCV Transfer Documents do not implicate the Plan or Confirmation Order. Ms. Schroeder confirmed in her testimony that she drafted and emailed these documents to Simranjit on January 8, 2018. [84, 96]. Simranjit testified that he did not sign the PCV Transfer Documents until early January 2018. So the PCV Transfer Documents were also intentionally backdated to dates on which they did not exist and on which they were not, and could not have been, signed. Moreover, like the Brightside Transfer Documents, the PCV Transfer Documents also did not exist on the Petition Date. And like the Brightside Transfer Documents, the PCV Transfer Documents are the operative postpetition transfer of Rajpal's and Taranjit's interests in PCV and its assets to Simranjit.

29. Tax returns that purport to show the Brightside and PCV interests transferred to Simranjit before the Petition Date are given no weight. They were prepared by an accountant based on information that Rajpal and Simranjit provided the accountant. Unlike statements to Ms. Schroeder regarding Rajpal's continued status as Brightside's Manager after Plan confirmation which the court believes because they are corroborated by other evidence, there is no similar evidence that independently corroborates what

- 17 -

Rajpal and Simranjit told their accountant.  The court does not
believe the tax returns are truthful.

Conclusions of Law

    30.  The court has jurisdiction over the subject matter of
this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.
This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A),
(E), (H), and (O).

    31.  Venue is proper pursuant to 28 U.S.C. § 1409.

    32.  The court takes judicial notice of the dockets in this
adversary proceeding and in the parent chapter 7 case.  See Fed.
R. Evid. 201(c)(1).

    33.  All evidentiary rulings placed on the record in open
court prior to the start of trial are incorporated herein by this
reference.

    34.  The October 8, 2019, memorandum decision, order, and
judgment granting partial summary judgment for plaintiff and
against defendants on the Fourth, Sixth, and Seventh Claims for
Relief as they pertain to the Marysville Property remains
interlocutory.  Chatha v. Whatley, No. 20-15519 (9th Cir. July
16, 2021); see also Pintlar Corp. v. Fidelity and Casualty
Company of New York (In re Pintlar Corp.), 124 F.3d 1310, 1312
(9th Cir. 1997) ("An order granting a motion for partial summary
judgment is an interlocutory order.").  An interlocutory decision
remains subject to revision before a final judgment is entered.
Fed. R. Civ. P. 54(b); Fed. R. Bankr. P. 7054(a); Balla v. Idaho
State Bd. of Corrections, 869 F.2d 461, 465 (9th Cir. 1986).  The
interlocutory summary judgment decision is revised by these

- 18 -

findings of fact and conclusions of law, and the order and
judgment entered thereon, except to the extent provided
otherwise.

    35.  The court's decision is based on 11 U.S.C. §§ 549 and
550.

    36.  The bankruptcy court has full statutory authority to
enter final judgment on claims brought under Bankruptcy Code §§
549 and 550.  See 28 U.S.C. § 157(b)(1).

    37.  As explained in this court's order of November 16,
2020, which is incorporated by this reference, the bankruptcy
court has full constitutional authority to enter final judgment
on §§ 549 and 550 claims, which are core proceedings and
congressionally-created claims that exist only in bankruptcy,
without the need to obtain or find the parties' consent.  See
Adv. Docket 422.  However, to the extent consent for the
bankruptcy court to enter a final judgment in this adversary
proceeding is necessary or required, plaintiff has expressly
consented and defendants have expressly and impliedly consented.
Id.; see also 28 U.S.C. § 157(c)(2).

    38.  Bankruptcy Code § 549(a) provides that a transfer of
property of the estate that occurs postpetition may be avoided by
the trustee if the transfer was not authorized under the
Bankruptcy Code or by the bankruptcy court.  See 11 U.S.C. §§
549(a)(1) and (2)(B); see also 40235 Washington Street Corp. v.
Lusardi, 329 F.3d 1076, 1081 (9th Cir. 2003) ("The purpose of
section 549 . . . is to provide a just resolution when the debtor
himself initiates an unauthorized postpetition transfer.  The
general rule in such situations is that the trustee is authorized

to avoid the transfer in order to protect the creditors."). Section 549 is used to recover property that should never have left the estate. <u>Aalfs v. Wirum (In re Straightline Investments Inc.)</u>, 525 F.3d 870, 878-79 (9th Cir. 2008).

39.  A "transfer" as defined in the Bankruptcy Code includes every direct, indirect, absolute, conditional, unconditional, voluntary, or involuntary disposition of property or an interest in property.  <u>See</u> 11 U.S.C. § 101(54)(D).  The term is defined broadly.  <u>Straightline</u>, 525 F.3d at 877.  It includes all transfers of possession, custody, or control of estate property. <u>Vasquez v. Mora (In re Mora)</u>, 218 B.R. 71, 74 (9th Cir. BAP 1998), <u>aff'd</u>, 199 F.3d 1024 (9th Cir. 1999).

40.  Rajpal's interest in Brightside and its assets and Rajpal's and Taranjit's interest in PCV and its assets were not transferred to Simranjit before the Petition Date.

41.  Backdating the Brightside Transfer Documents and the PCV Transfer Documents to prepetition dates or effective dates does not create a prepetition transfer of the interests.  In other words, the backdated documents do not create facts that never existed in the first instance, particularly, when the backdated documents themselves did not exist on the dates to which they are backdated.  <u>Cf. Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano</u>, --- U.S. ---, 140 S. Ct. 696, 700-01, 206 L. Ed. 2d 1 (2020) (federal courts may not retroactively create jurisdiction for purposes of remand when jurisdiction did not exist in the first instance on the retroactive remand date).

42.  Even if resolutions to transfer the Brightside and PCV

interests were legitimately entered into Brightside's and PCV's books or records before the Petition Date, without more, the resolutions would not effectuate a prepetition transfer of Rajpal's interest in Brightside and its assets to Simranjit or Rajpal's and Taranjit's interest in PCV and its assets to Simranjit. <u>Norio, Inc. v. Casey (In re Downs)</u>, 2019 WL 6331564 at *4-*5 (9th Cir. BAP Nov. 25, 2019), <u>aff'd</u>, 835 Fed.Appx. 262 (9th Cir. Jan. 29, 2021); <u>Rocklon, LLC v. Paris</u>, 2016 WL 6110911 at *5 (Tex. App. Oct. 20, 2016).

43. Because the Brightside Transfer Documents and the PCV Transfer Documents were created and signed after the Petition Date, they are subject to attack under Bankruptcy Code § 549 even if they purport to relate to prepetition events. <u>In re National Audit Defense Network</u>, 322 B.R. 896, 913 (Bankr. D. Nev. 2005) ("[T]he postpetition transactions may have been in relation to a prepetition event, but because they physically occurred postpetition, they are appropriately categorized as postpetition transfers subject to attack under Section 549.").

44. A bankruptcy estate typically includes all of a debtor's property and property interests in existence as of the date the debtor files the petition. <u>See</u> 11 U.S.C. § 541(a).

45. Accordingly, the full extent of Rajpal's interest in Brightside and its assets, including his "sole and exclusive" authority over Brightside's finances and disposition of its assets as Manager, and the full extent of Rajpal's and Taranjit's interest in PCV and its assets became property of their bankruptcy estate on the Petition Date. <u>Fursman v. Ulrich (In re First Fire Protection, Inc.)</u>, 440 B.R. 821, 830 (9th Cir. BAP

2010); <u>Fresno Rock Taco, LLC v. National Sur. Ins. Corp.</u>, 2015 WL 135720 at *13 & n.32 (E.D. Cal. Jan. 9, 2015); <u>see also</u> Ex. 141 at 13:9-17.

46.    Rajpal's interest in Brightside and its assets and Rajpal's and Taranjit's interest in PCV and its assets vested in the plaintiff as the trustee in the parent chapter 7 case.  <u>See</u> 11 U.S.C. § 323(a); <u>see also</u> Ex. 141 at 13:9-17.

47.    "However, simply because a debtor's interest in property passes to the bankruptcy estate, it does not mean the debtor can no longer go through the mechanics of transferring estate property."  <u>In re Herter</u>, 464 B.R. 22, 29 (Bankr. D. Idaho 2011).

48.    "Debtor-initiated transfers of estate property may be avoided where they occur post-petition and have not been authorized by the Code or the court.  § 549(a)."  <u>Herter</u>, 464 B.R. at 30; <u>see also</u> <u>40235 Washington St.</u>, 329 F.3d at 1081 (stating that the purpose of § 549 is to permit the trustee to recover estate property "when the debtor himself initiates an unauthorized postpetition transfer."); <u>Cherrier & King Partnership v. Compton (In re King Fischer Fisheries, LLC)</u>, 2005 WL 6960221 at *7 (9th Cir. BAP June 17, 2005) (concluding that debtor-agent initiated payment with funds that were property of the estate without court authority was avoidable under § 549).

49.    The Brightside Transfer Documents and the PCV Transfer Documents are, respectively, postpetition transfers of estate property to Simranjit consisting of Rajpal's interest in Brightside and Rajpal's and Taranjit's interests in PCV, and their respective assets, initiated by Rajpal and Taranjit as

- 22 -

debtors in the parent chapter 7 case. The funds that Rajpal withdrew from Brightside's Chase account and gave to Simranjit in the form of a cashier's check is also a debtor-initiated postpetition transfer of estate property.

50. The above-referenced debtor-initiated transfers were made without plaintiff's consent, they were not authorized by the court, and they are not authorized by or under any provision of the Bankruptcy Code. See Fed. R. Bankr. P. 6001.

51. The unauthorized postpetition transfers of Rajpal's interest in Brightside and its assets to Simranjit, the unauthorized postpetition transfer of Rajpal's and Taranjit's interests in PCV and its respective assets to Simranjit, and the unauthorized postpetition transfer of Brightside's funds to Simranjit are all avoidable and will be avoided under Bankruptcy Code § 549(a).

52. Only Rajpal as Brightside's Manager had the "sole and exclusive" authority to dispose of Brightside's assets before the Petition Date. Only the plaintiff, as the trustee appointed in Rajpal's and Taranjit's chapter 7 case, had that authority after the Petition Date. Erickson v. Richardson, 86 F.2d 963, 972 (9th Cir. 1936) ("While the transfer of all the debtor's assets to the trustee is involuntary, the trustee merely steps into the shoes of the bankrupt, and takes the stock without changing the character of the obligation of the debtor stockholder."); First Fire Protection, 440 B.R. at 830. Consequently, Simranjit lacked authority to transfer the Hotel from Brightside or on its behalf to Summerfest. The General Warranty Deed dated August 7, 2017, is invalid and a legal nullity.

53.  To the extent the General Warranty Deed was recorded postpetition, it was recorded in violation of 11 U.S.C. § 362(a)(3) and is void.  <u>Griffin v. Wardrobe (In re Wardrobe)</u>, 559 F.3d 932, 934 (9th Cir. 2009) (act in violation of the automatic stay is void ab initio); <u>Dynasty Group, Inc. v. Smith</u>, 2018 WL 9651887 at *4-*5 (S.D. Miss. Sept. 25, 2018) (explaining Fifth Circuit law in the context of a quitclaim deed recorded postpetition).[4]

54.  "Where a trustee avoids a post-petition transfer pursuant to § 549, § 550(a) allows the trustee to recover the transferred property, or its value, from either the initial transferee or any successive transferee for the benefit of the bankruptcy estate."  <u>Herter</u>, 464 B.R. at 30; <u>Decker v. Tramiel (In re JTS Corp.)</u>, 617 F.3d 1102, 1111 (9th Cir. 2010).

55.  Plaintiff, in his capacity as the trustee appointed in the parent chapter 7 case, will recover Rajpal's interest in Brightside and its assets, Rajpal's and Taranjit's interest in PCV and its assets, and $145,918.75 of Brightside's funds from

_____

[4]Plaintiff moved to amend to conform to evidence presented at trial.  Leave to amend to conform to evidence is freely granted "when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence will prejudice that party's action or defense on the merits."  Fed. R. Civ. P. 15(b)(1); Fed. R. Bankr. P. 7015.  The postpetition recordation is based on a finding made in the Westates AP which, as noted above, was admitted into evidence without defendants' objection and is undisputed.  The absence of an objection means that defendants do not consider the memorandum decision to be prejudicial evidence.  Moreover, although defendants objected to the motion to conform they did not request a continuance to meet conforming evidence.  <u>See Id.</u>  Therefore, to the extent the evidence reflects that the General Warranty Deed was recorded postpetition and thence in violation of § 362(a), the court grants plaintiff's motion to conform to the evidence.

1  Simranjit as a transferee pursuant to § 550(a)(1).

2       56.   To the extent the Hotel is in the possession, custody,

3  or control of Summerfest, or Summerfest exerts dominion over the

4  Hotel, plaintiff, in his capacity as the trustee appointed in the

5  parent chapter 7 case, will recover the Hotel from Summerfest as

6  a subsequent transferee.  See 11 U.S.C. § 550(a)(2).

7       57.   The § 549 claims are timely.

8       A.    Bankruptcy Code § 549(d)(1) provides for a two-

9  year limitations period after the date of the postpetition

10  transfer to be avoided.[5]

11       B.    Rajpal's unauthorized postpetition transfer of

12  Brightside's funds to Simranjit in the form of a cashier's check

13  occurred when Rajpal delivered those funds to Simranjit which

14  Simranjit testified occurred no later than September 30, 2017.

15  Mora v. Vasquez (In re Mora), 199 F.3d 1024, 2017 (9th Cir.

16  1999).   The initial complaint which included a claim to recover

17  the interest in Brightside and its assets was filed approximately

18  nine months later on June 22, 2018, and is timely.   So too is the

19  amended complaint filed on June 10, 2019, which includes a

20  profits and proceeds claim in the Eighth Claim for Relief.

21       C.    The § 549 claim in the Tenth Claim for Relief as

22  it pertains to the unauthorized postpetition transfer of Rajpal's

23  interest in Brightside and its assets to Simranjit relates back

24  to the filing of the initial complaint on June, 22, 2018, through

25  the Third Claim for Relief.  See Fed. R. Civ. P. 15(c)(1)(B);

26  ─────────────────────

27      [5]Section 549(d)(2) is inapplicable.   Rajpal's and Taranjit's
chapter 7 case remains open and pending.   See 11 U.S.C. §

28  549(d)(2).

Fed. R. Bankr. P. 7015.  Defendants acknowledged this relation

back in an opposition to plaintiff's motion for leave to amend to

add the Tenth Claim for Relief in the TAC which states as

follows:

> Defendants do not oppose the relief requested, to amend
> the complaint to add [the Tenth Claim for Relief].
> Since the original complaint, Plaintiff has alleged (in
> the Third Cause of Action) that Plaintiff is the owner
> of Brightside and sought 'a judgment declaring that
> Brightside/March On Hospitality and its assets (or the
> successors of Brightside/March On Hospitality) are
> owned by the Chapter 7 Estate, as an asset of the
> Debtors when they filed their Chapter 7 petition.'

[Adv. Docket 361 at 1:26-2:4].

Inasmuch as the unauthorized postpetition transfer of

the Brightside interest and its assets occurred with the

Brightside Transfer Documents, and thus no later than January

2018, the initial complaint filed approximately five months later

on June 22, 2018, and thence the § 549 claim in the Tenth Claim

for Relief, is timely.

D.   The § 549(d)(1) limitations period as it pertains

to the Eleventh Claim for Relief which concerns the unauthorized

postpetition transfer of Rajpal's and Taranjit's interest in PCV

and its assets (and alternatively as it pertains to the Tenth

Claim for Relief) is subject to equitable tolling based on

Rajpal's, Simranjit's, and Ms. Schroeder's conduct.  <u>Olsen v.</u>

<u>Zerbetz (In re Olsen)</u>, 36 F.3d 71, 73 (9th Cir. 1994).

Rajpal initially produced the Brightside Transfer

Documents and the PCV Transfer Documents for plaintiff on or

about January 10, 2018.  Rajpal thus produced the documents

immediately after they were drafted by Ms. Schroeder, Ms.

Schroder sent them to Simranjit, Simranjit signed them, and

1  Simranjit thereafter sent them to Rajpal.  Rajpal and Simranjit
2  subsequently testified that they could not recall who drafted the
3  documents, when the documents were drafted, and when the
4  documents were signed.  It was only after Ms. Schroeder produced
5  emails and documents relevant to the Eleventh (and Tenth) Claims
6  for Relief and testified under oath about those documents after
7  the Texas District Court rejected her effort to quash plaintiff's
8  subpoena of October 29, 2019, that Simranjit remembered who
9  prepared the documents, when he received the documents, and when
10  they were signed.
11      The above-described chain of events leaves no doubt
12  that Rajpal and Simranjit actively suppressed evidence relevant
13  to the Eleventh (and Tenth) Claims for Relief and that plaintiff
14  sufficiently learned of the suppressed evidence when he
15  subpoenaed it October 29, 2019.  The court therefore concludes
16  that the limitations period of § 549(d)(1) for purposes of the
17  Eleventh (and alternatively the Tenth) Claims for Relief was
18  equitably tolled to and including October 29, 2019.  The § 549
19  claims in the Eleventh (and Tenth) Claims for Relief in the TAC
20  which was filed less than one year later on September 17, 2020,
21  are therefore timely.
22      58.  To the extent that any finding of fact is deemed a
23  conclusion of law or a conclusion of law deemed a finding of fact
24  they may be construed as such.
25      A separate order and judgment will issue.
26      Dated:  August 9, 2021.
27
28                              UNITED STATES BANKRUPTCY JUDGE

- 27 -

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Christopher D Hughes
621 Capitol Mall #2500
Sacramento CA 95814

Gregory J. Hughes
2370 W. Highway 89A, Ste. 11-470
Sedona AZ 86336

Thomas R. Phinney
3600 American River Drive, Suite 145
Sacramento CA 95864